# CHARLES MILSKE *vs.* THE STEINER MANTEL COMPANY.

*Building Contract—Bond of Contractor for Performance is Collateral —House Blown Down in the Course of Erection—Obligation to Re-Build—Entire Contract—Unpaid Installments—Duplicity in Plead-ing—Award of New Trial When Judgment Affirmed.*

When a contract for the erection of a building according to certain spec-ifications provides also that the contractor shall give a bond conditioned for his faithful performance of the contract, the bond so given is col-lateral, and does not add to or change any of the terms of the contract, and the rights and liabilities of the parties under the contract are to be determined without reference to the bond.

An unconditional contract for the erection of a building provided that the contractor should give a bond conditioned for his due performance. The bond stipulated that neither the principal nor the surety shall be liable for any damage resulting from an act of God. The building was destroyed by a storm before its completion. *Held,* that this provision in the bond has no effect on the liability of the builder to restore the structure.

When a house is blown down in the course of erection the loss falls on the contractor who agreed to erect it under an absolute, entire contract, and he is under an obligation to re-build and the owner of the land is under a corresponding implied obligation to permit him to re-build.

A contract for the erection of a building, provided for the payment of part of the price in installments as the work progressed and the balance upon completion. The building was blown down by a storm of un-usual violence before it was finished and at that time one of the install-ments was due and unpaid. The contractor although willing to replace the structure was prevented by the land owner from doing so. *Held,* that the contractor is entitled to maintain an action for the unpaid in-stallment and also for the refusal to permit him to rebuild and perform the contract, but these two causes of action should not be combined in the same count of the declaration.

A contract for the erection of a building for a fixed sum part of which is to be paid in installments as the work progresses and the balance upon its completion is an entire and not a divisible contract.

When an entire contract stipulates for the payment of fixed sums period-ically, an action lies to recover any of these payments, and in such case there may be several actions on the same contract.

One count of the declaration alleged that after the destruction of the build- ing which plaintiff was erecting for defendant by a storm, the defendant rescinded the contract and refused plaintiff permission to re-construct the building, and refused to pay a sum of money then due as an install-ment, and refused to pay the plaintiff for the large amount of materials he had provided and which were used by the defendant in rebuilding, and made an absolute breach of the contract, although the plaintiff was ready and willing to complete said building in accordance with the terms of the agreement. *Held*, that this count is bad on demurrer for duplicity, since it combines two distinct breaches of contract by the de-fendant.

When a demurrer to a declaration is ruled good and the judgment for the defendant is affirmed on appeal, the case will nevertheless be remanded for a new trial if it appears that the plaintiff has a meritorious cause of action which, by amendment of the declaration, can be properly stated, since Code, Art. 5, sec. 22, provides that when it shall appear to this Court that a new trial ought to be had such new trial shall be awarded.

Appeal from the Court of Common Pleas (SHARP, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, SCHMUCKER, JONES and BURKE, JJ.

*William S. Bansemer* (with whom were *Marbury & Gosnell* and *Charles P. Coady* on the brief), for the appellant.

The principle underlying each of the counts is that the bond and building contract taken together constitute the agreement between the parties. That as the building contract calls for the bond (executed by the appellant with a surety) to be delivered simultaneously with the execution of it, the said building contract, that the two papers together form the complete agreement between the parties, and that delivery of the bond to the appellee and its acceptance show an assent on the part of the appellee as to all the provisions and specifica-tions of the bond, which, in fact, become binding upon it. There are numerous cases which hold that the contract and the accompanying bond are to be taken together in determin-ing what the agreement actually is. *Dunbar* v. *Fleisher*, 137 Pa. St. 85; *Lock* v. *McVean*, 33 Mich. 473; *Jordan* v. *Reva-naugh*, 63 Ia. 152; *McLellan* v. *Wellington*, 48 Kan. 760. The latter case, in fact, says that the obligation in the bond is mutual, binding the obligee as well as the obligor.

All this proceeds upon the well-recognized principle that by acceptance a deed poll will be deemed a deed of both parties. *Ency.*, ed. 2d, vol. 8, p. 65; *Finley* v. *Simpson*, 22 N. J. Law, 311; *Atlantic Co.* v. *Leavitt*, 54 N. Y. 35, 38.

In *Shore* v. *Leavitt*, 3 Sand. Ch. 163, a bond, writing of transfer and an explanatory letter were construed as one contract. "The bond's force as a contract, rests on its delivery to and the acceptance by the company." Also see *Hanford* v. *Rogers*, 4 Barb. 20.

In *Watson* v. *O'Neill*, 14 Mont. 179, 201, also a building contract case, the Court held that the plans and specifications, the contract for the erection and completion and the bond are all contemporaneous and parts of the same transaction, and as such should be construed together in order to explain each other and to determine the rights, obligations and liabilities of the parties thereto. Generally upon the rule that papers contemporaneously passed between the parties must be construed together as constituting one agreement. See *Joy* v. *St. Louis*, 138 U. S. 38; *Drenner* v. *Satterfield*, 119 Ala. 86; *Bradfield* v. *Cook*, 27 Ore. 203.

It being the law that the bond and the contract constitute the complete agreement between the parties, it follows that the four "express conditions" in the bond are binding on both parties. The third condition dealing with the possibility of a storm severe enough to blow the building down, says that the principal, the appellant here, shall not be liable for any act of God or for tornadoes, cyclones, etc. That the principal shall not be liable for the reconstruction or repairing of any work or materials damaged or destroyed by said causes.

The first count is a very mild claim on the part of the appellant. It would seem that the failure of the appellee to pay the installments due at the certain specified stages to which the work had progressed before the storm would of itself justify the appellant, if he desired to avail himself of the privilege, to call the contract off, to abandon further performance and simply charge the appellee with the breach in not paying installments due and recover for his work and materials up to

the time that he chose to act upon the appellee's breach, and treat the contract as rescinded. The time in which these payments should be made must be taken in this contract as the essence just as in *Shaub's case*, 96 Md. 535. It cannot be concluded that the appellant here was ready to extend·indefinite credit to the appellee and was willing to continue to perform and continue to extend credit should the stipulated payments be withheld. See also, *Curtis* v. *Gibney*, 55 Md. 155; *McGrath* v. *Gegner*, 77 Md. 337.

The first count makes no claim for the expected profits to the appellant upon a full performance of his contract, but simply claims for the damage to him as of the date when his operations under the contract ceased. It embraces a part, but not all, of what he is entitled to claim. It is a good count so far as it goes. The lower Court's objection to it was by reason of the claim for amounts for materials provided by the plaintiff "under said contract," subsequent to the falling due of the last stipulated installment of money, and prior to the occurrence of the storm. The lower Court held that making claim for such materials in addition to the stipulated installments was inserting in an action of covenant a claim which should be in *assumpsit* on a *quantum meruit.*

It is obvious, however, that the plaintiff, the appellant's rights are essentially upon a specific contract. In the first count (under the theory that the bond and the building contract go together as one) a breach of this contract has been committed and so all damages resulting to the appellant are recoverable in an action for its breach. It is not a case for a *quantum meruit,* for in the "nature of things there can be no implied contract where there is an express contract." An implied contract arises by operation of law because of the absence of an express agreement. *Dougherty Co.* v. *Gring,* 89 Md. 544–545.

The loss to the plaintiff, appellant, in providing certain materials between June 10th, 1903, and the storm, is simply one of the elements of damage which the plaintiff can recover, in his general action for breach of the contract, and he should

not be driven for redress as to that element of damage to another action.

In the second count it was endeavored to show a renunciation of the contract by the defendant, appellee, in the course of performance. It is there clearly alleged that the defendant rescinded the contract; refused the plaintiff permission to reconstruct said building and to do further work upon the same; refused to pay the amount then due, and made an absolute breach of the contract, although the plaintiff was ready, willing and able to complete; and the defendant prevented the plaintiff from continuing said contract without justification.

In *Chapman* v. *Beltz*, 48 W. Va. 12, it was held that such a renunciation by the defendant was a breach and that there would be no obligation upon the plaintiff to rebuild or complete improvements, no matter what the plaintiff was obliged to do on his part to replace the building after the storm.

Thus irrespective of what the plaintiff was obliged to do, a renunciation of the contract by the defendant was sufficient to discharge the same, leaving to the plaintiff his right of action for damages for the breach, in which damages there should be considered the material "provided under said contract" which material was of course lost to the plaintiff. And thus there is no necessity for a further action on the *quantum meruit* for the recovery for those materials specially. This point is expressly decided in *Black* v. *Woodrow*, 39 Md. 194.

The third count of the *narr.* proceeds upon this theory— that the contract was entered into with the intention that it was to be fully performed; that work and materials were to be provided to the extent of getting a complete building erected on the appellee's lot; that each party was entitled to have the contract fully performed so as to obtain the respective benefit coming to him from such full performance. In such a building operation loss from an act of God must fall upon one or the other of the contracting parties. Here under the contract, the appellant is relieved of the burden of such loss.

The happening of such loss does not work a termination of the contract. *Hammon on Contracts*, p. 828, 415.

As the main object of the contract is to have the matters stipulated in it performed, such loss must fall upon the party who is not excused.    If one party is excused, the clear inference and intention, bearing in mind that the contract is at all hazards to be performed, must be upon the other party.    An act of God is never a matter discharging the contract.    In a few special instances, as in contracts predicated upon the continued existence of a person or thing, it may furnish the party upon whom a demand for performance is made, with an excuse for non-performance.    *Southern Building Association* v. *Price*, 88 Md. 163, and citations.    In such cases it is a matter of *defense* from performance, and not a matter obliterating the contract.    This brings, also the substance of the case at bar to a similarity with that of *Black* v. *Woodrow*, 39 Md. 194.

*William S. Bryan, Jr.*, and *John H. Richardson*, for the appellee.

Milske's contract with the Mantel Company for the erection of the building was an entirety; it was not a series of divisible and separate contracts for the doing of separate and independent things.    The reason the contract is an entirety is because it was the *intention* of the parties that it should be one entire contract, and not a series of independent contracts. The true rule of law on the construction of such contracts is clearly stated in 30 *American and English Encyclopædia of Law* (2 ed.), p. 1207; see also *Freeman* v. *Campbell*, 22 Ga. 184; *Cox* v. *W. Poe R. R.*, 44 Cal. 18.

The contract being an entirety, therefore, and it being the duty of the builder, Milske, to erect a complete building, it would seem to follow, necessarily and logically, that he couldn't recover unless he had completed the building according to the terms of the contract; and that, even if certain installments had heretofore been due and demandable, they ceased to be so due and demandable when the building ceased to be in the condition and the stage of completion which called for their payment.    And this would be so where the building was destroyed by the act of God, and without fault on the

part of the builder.    And if such installments of the contract price of construction had been paid to the builder before the destruction of the building, he could be compelled to refund such installments unless he completed the building, according to the requirements of the contract.    The rule of law on this point is well summed up in 30 *American and English Encyclopædia of Law* (2d ed.), p. 1249: "A contractor who agreed under an entire contract to construct an entire work is not excused from the full performance of his contract by the destruction of the work when partly completed, but must himself bear the loss, though such destruction is caused by unavoidable accident; and not only in such a case is he denied a recovery of compensation for the partly completed work, but the builder may recover from him partial payments made as the work progressed, and may maintain an action for damages against the contractor for failure to perform his contract.    This rule has chiefly been announced where the structure was destroyed, before completion, by fire, but is equally applicable where the structure falls by reason of latent defects in the soil, or is destroyed by lightning, by a freshet or by a storm.    See also, *Fildew* v. *Besley*, 42 Mich. 100; *Appleby* v. *Myers*, L. R. 2 C. P. 651; *Anglo-Egyptian Navigation Co.* v. *Rennie*, L. R. 10 C. P. 271; *Stone* v. *Allen*, 1 Heisk. (Tenn.) 486.

A case in which the above-quoted rule was enforced against a contractor, under circumstances of considerable hardship, is found in our own Court of Appeals.    *Eichelberger* v. *Miller*, 20 Md. 332.

It is averred in the first count that the defendant used certain materials, which had been provided by plaintiff to be used in the building.    It was the plaintiff's duty to provide these materials to be used in the building, and they were a part of the consideration for the money to be paid by defendant for the completed building.    He cannot recover for them in an action on this contract.    If he thinks that the defendant had no right to use them, he is at liberty to test the question in another form of action.

The bond with surety was given by the plaintiff to secure

the performance of his contract, and was specially required in the sealed agreement. It is impossible to suppose that it was intended to change or vary any of the terms of the agreement.

It is manifest that in the third condition of the bond, where it is said that the principal shall not, nor shall the surety be liable for any damages resulting from an act of God, it was meant that such principal and surety are not to be responsible to the obligee so as to be liable to suit by it *upon the bond* for this cause. The principal and surety were defining and limiting their liability *under the bond.*

This bond was executed by the plaintiff and the Surety Company as obligors to the defendant as obligee. The defendant did not bind itself by the bond to do anything. It simply was to receive the damages incurred by the breach of the bond. It would be a solecism in jurisprudence for the obligor in a bond to sue the obligee.

As further showing the absurdity of the contention that any affirmative rights arose in Milske from his execution of this bond, it is to be noted that there were two joint obligors in the bond, Milske and the Surety Company; any conceivable responsibility incurred by the Steiner Mantel Company would be incurred in favor of both of these obligors jointly. Therefore, if there were to be a suit against the Steiner Mantel Company to enforce any liability arising from the bond, both the Surety Company and Milske should have been the plaintiffs. *Wallis* v. *Dilley*, 7 Md. 250; *Armstrong* v. *Robinson*, 5 Gill & Johnson, 213.

The objection, that a right supposed to arise from the bond is being endeavored to be enforced by one only of the obligors, is apparent on the face of the pleadings; it is, therefore, fatal on demurrer. *Jacobs* v. *Davis*, 34 Md. 215.

The defendant could sue the present plaintiff and his surety on the bond, and the terms specify and determine the extent of their liability to it. The defendant assumes no liability to them. And if it had done so, their right of suit against it would, as just stated, have been joint. The present plaintiff could not unite such joint liability to the several liabilities

averred in this action.    It is submitted that the demurrer to the first count was properly sustained.

The second count sets forth the sealed agreement and the bond.    It, also, avers that work was done on the building until its destruction by the storm.    It, also, avers that the plaintiff was not liable for the loss occasioned by the act of God, and that the storm was an act of God; that the defendant refused to recognize its liabilities under the contract, and refused to give plaintiff permission to reconstruct the building; and refused to pay the plaintiff the amount due him, and to pay for certain material which plaintiff had provided; and made an absolute breach of its contract, although the plaintiff was ready, willing and able to complete the building in accordance with the terms of the agreement, and tendered so to do.

There is an obscurity and vagueness in these averments which sustain the opinion of the trial Court in holding the count void for uncertainty.    The count does not state specifically what particular acts constituted the liabilities, which the defendant is charged with refusing to recognize, and what particular acts it committed when it made the absolute breach of the contract which it is charged with committing; and when the count states that the plaintiff was willing to complete the building in accordance with the terms of his agreement, it does not show what the terms of his agreement required him to do as he understood them.    But, if the count does not show what the plaintiff was willing to do, it is quite evident that he was not willing to reconstruct the building at his own expense.    This was the duty of the plaintiff, and he ought to have so stated distinctly; but the count states that he was not liable for loss occasioned by the act of God; meaning that the loss was not to fall on him, but on the defendant; in other words, that the defendant ought to furnish him with money to repair the loss which had been sustained.    This count does not aver performance by the plaintiff, and it is submitted that the demurrer to the second count was properly sustained.

BURKE, J., delivered the opinion of the Court.

This is an action of covenant based upon a sealed agree-

ment between the parties to the suit dated June the 1st, 1903.
The suit was originally instituted in the Circuit Court for Bal-
timore County, but was subsequently removed to the Court
of Common Pleas.    By leave of the Court, the plaintiff, on
the 19th of June, 1905, filed an amended declaration which
contained three counts, each of which purported to assign
breaches of the agreement committed by the defendant.    The
defendant demurred to each count of the declaration.    The
Court sustained the demurrers, with leave to the plaintiff to
amend, which he declined to do, and thereupon the Court en-
tered judgment on the demurrers in favor of the defendant.
From this judgment the plaintiff appealed.    The record,
therefore, presents this one question; was the Court's ruling
upon the demurrers correct?

The circumstances which gave rise to the suit are as fol-
lows:    The defendant corporation contemplated the erection
of a brick factory and store house to be located in Baltimore
County, and to that end had plans and specifications for the
construction of the work prepared.    The contract was awarded
to the plaintiff on the 1st of June, 1903, and he obligated
himself to complete the work in forty-seven working days.
During the course of the erection and construction of the
building, and when the same had been almost completed, it
was blown down on the 12th of July, 1903, by a storm of
unusual violence and severity which swept over the section of
the county in which the building was located.    It was made
a condition precedent to the awarding of the contract to the
plaintiff that he should enter into a bond to the defendant, in
conjunction with a surety company satisfactory to the defend-
ant, as surety, conditioned for the faithful performance of the
contract.    There was also stipulation in the contract that as
the work advanced to certain stages of completion the plain-
tiff should be paid certain specified sums.    When the storm
of the 12th of July, 1903, demolished the building, an install-
ment of fifteen hundred dollars due the plaintiff under said
provision of the contract was unpaid.

The proposition for which the plaintiff contends is that

under the contract between himself and the defendant all losses, or damages which resulted to the building from the storm of July 12th, 1903, which the *narr.* describes as an "act of God," must be borne by the defendant, and that he, the plaintiff, has a right under the contract to recover all such losses and damages to said work as he may be able to show he sustained by reason of the storm. The first and third counts are based solely upon this contention. The second count presents a different question, and will be considered later. The first count seeks to recover an unpaid installment of fifteen hundred dollars, and also the value of the materials used in the construction of the building, which it alleges were retained and used by the defendant. The third count alleges that "the defendant was bound to suffer and stand good for the loss from an 'act of God' and the plaintiff was relieved from any loss so incurred, and that the defendant was under an obligation to bring the building to the stage of completion to which it had progressed at the time it was destroyed." Under this count the plaintiff seeks to recover profits on the contract, the unpaid installment of fifteen hundred dollars, and the value of the materials used in the work.

The theory upon which the plaintiff seeks to maintain these counts is that the bond and building contract are to be taken together as constituting the agreement by which the rights and duties of the respective parties to the suit must be determined, and that inasmuch as by the third condition contained in the bond given by the plaintiff and the American Surety Company it is provided: "That the principal shall not, nor shall the surety be liable for any damage resulting from an act of God," it is argued that thereby the obligations asserted in the first and third counts were imposed upon the defendant, and that upon this conception of the character and meaning of the contract the pleader has introduced *verbatim* into each count of the *narr.* the agreement and bond. It, therefore, appears that the question presented involves an inquiry as to what was the contract entered into between the parties, and what were he rights and obligations arising thereunder.

It is needless to quote authorities to show that in the con-
struction of a contract the intention of the parties as it ap-
pears from the whole agreement must be ascertained and
given its full effect. The rule of construction was stated, with
great clearness, in *Nash* v. *Towne*, 5 Wallace, 699, as follows:
"Courts, in the construction of contracts, look to the language
employed, the subject-matter, and the surrounding circum-
stances. They are never shut out from the same light which
the parties enjoyed when the contract was executed, and, in
that view, they are entitled to place themselves in the same
situation as the parties who made the contract, so as to view
the circumstances as they viewed them, and so to judge of
the meaning of the words and of the correct application of
the language to the things described."

When the contract for the construction of the factory and
the store-house is looked at in the light of these principles, the
contention of the plaintiff that the covenants and conditions
of the bond, which the plaintiff was required to give for the
faithful performance of his duties, are to be read into the con-
tract, and to be taken, not only as narrowing and limiting his
obligations under his agreement with the defendant, but as
imposing new and additional duties upon the defendant, can-
not for a moment be entertained. The plaintiff undertook to
do a certain, definite thing, towit, the erection and completion
of a factory and store-house according to the plans and speci-
fications furnished by the defendant. These plans and specifi-
cations constituted a part of the contract. He was to do all
the work, and furnish all the materials to be used in and about
the erection of the building, and was to do the work in a good
and thorough workmanlike manner. He further obligated
himself to have the building completed and ready for the
business for which the same was to be erected in a specified
number of days. Upon the performance by the plaintiff of
all the covenants on his part to be performed, the defendant
agreed to pay to the plaintiff the sum of $8,794.50 in the fol-
lowing installments, viz., $500 when the building is completed
to the first floor, and the first floor joists are laid; $1,000 to

be paid when the building is completed to the second floor, and the second floor joists are laid; $1,000 to be paid when the building is completed to the third floor and the third floor joists are laid; $1,500 to be paid when the building is completed to the roof and the roof is placed upon the same; $500 to be paid when the flooring on the first floor is laid and trimmed out; $500 to be paid when the flooring on the second and third floors each is laid and trimmed out. The balance of $3,294.50 to be paid when the building is completed in accordance with said plans and specifications, and same delivered to said party of the second part free of all claims by the party of the first part or any party claiming through him. There is also a stipulation that on the signing of the contract the plaintiff should execute a bond in the sum of four thousand dollars with some responsible bonding company satisfactory to the defendant, "*conditioned for the faithful performance of his duties in the erection of said building.*"

These are the main and substantial provisions of the contract. It is an absolute and unconditional contract on the part of the plaintiff. There are no conditions, or contingencies incorporated, or provided for therein by which he might be excused from performance, or might be relieved from loss, or damage, or whereby the loss occasioned by the storm mentioned in the declaration might be imposed upon the defendant. The bond was given, not to vary, or change in any particular the obligations of the plaintiff under the contract, but to secure the faithful performance by him of all the duties assumed by him thereunder. Its object was to protect the defendant from loss, or damage which might result from non-performance by the plaintiff, and cannot be construed to add to, or change any of the terms of the contract, or to be taken as a part thereof. When the purpose of the contract, its subject-matter, and the surrounding circumstances at the time are considered, it would seem to be perfectly clear that the bond is an entirely independent and collateral contract given to protect the defendant against any *default or miscarriage of the plaintiff under the contract.* The original obligation to construct the building

had been undertaken by the plaintiff, and the bond must be treated as a contract of guaranty, or suretyship for the faithful discharge of his duties under his agreement with the defendant. That the original and distinct obligation of the plaintiff existed, and that the bond was a mere collateral agreement founded upon it, appears clear from the language employed, and from a consideration of the surrounding circumstances. The bond may, therefore, be dismissed from the case, and should not have been introduced into the declaration.

With the bond out of the case, it must be admitted that the plaintiff cannot recover for the loss which the storm occasioned, for by all the authorities, in the absence of special provisions in the contract providing for such a contingency, the loss must fall upon the plaintiff. In both counts the contract is treated as a subsisting, binding obligation. Neither alleges performance by the plaintiff, nor does either disclose any legal excuse for his failure to perform the contract. The theory upon which both counts rest is that the failure of the defendant to pay the losses which the plaintiff sustained by the storm constitutes a breach of the contract from which a right of action accrued to the plaintiff. This contention, as we have said, is based upon a fallacious construction of the contract, and as both counts are framed upon that construction, both are bad.

They are bad for a further reason which will be stated when the second count is considered, which we will now examine. The contract sued on is an *entire*, and not a *divisible* contract. The thing with which it deals is the building and construction, in a certain specified manner, of a factory and warehouse. But it contains certain stipulations by which the defendant obligated itself to pay to the plaintiff certain specified and definite sums of money at stated periods as the work progressed. When the building had reached the stage of completion designated in the contract, the obligation of the defendant to pay the sums specified therein became fixed and absolute. But it is argued that because the contract is an *entire contract* no suit can be brought thereon until the plaintiff has fully performed his agreement. Whatever may be the

rule in other jurisdictions, the *mere fact* that the contract is *entire* does not preclude the plaintiff from enforcing the payment of the unpaid installments due and payable thereunder. In *Broumel* v. *Rayner*, 68 Md. 50, this Court said: "In *Taylor* v. *Laird*, 1 Hurst & Nor. 273, POLLOCK, C. B., determined that when there is a contract for an *entire* service, but the parties stipulated that payments for such service shall be made periodically in fixed sums, a failure to make any one of these payments may become the foundation for a suit. Thus it is manifest that many suits may grow out of one contract. This principle has been recognized in all of the States."

Notwithstanding the destruction of the building by the storm, the defendant was under an obligation to permit the plaintiff to perform his contract by rebuilding the structure. In *Black* v. *Woodrow & Richardson*, 39 Md. 215, JUDGE AL-VEY said: "It not unfrequently occurs, that contracts on their face and by their express terms appear to be obligatory on one party only, but in such cases, if it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied. Thus, if the act to be done by the party binding himself can only be done upon a corresponding act being done or allowed by the other party, an obligation by the latter to do or allow to be done the act or things necessary for the completion of the contract will be necessarily implied. *Churchward* v. *The Queen*, 6 B. & S., 807. And among the instances given of such implied obligation, is the case where A covenants or contracts with B to buy an estate of the latter, at a given price, there, although the contract may be silent as to any obligation on the part of B to sell, the law implies a corresponding covenant or contract by him to sell and convey the estate. *Pordage* v. *Cole*, 1 Wms. Saund. 319. Indeed, no better instance of the proper application of the principle could be furnished than the present case. The appellee agreed with the appellant to build for the latter a house on

his land for a certain price, part to be paid while the house was in course of erection, but the larger part of the price was not to be paid until the house was completed; although the appellant could not be compelled to have the house built against his consent, yet, notwithstanding the contract is silent as to the appellant's promise that he would suffer the house to be built, the agreement with the appellees for the building of the house clearly implies that he would allow that to be done, without which it would be impossible for the appellees to do what they had agreed to do. To allow or suffer the house to be built was the corresponding or correlative obligation of the appellant, implied by the law to the obligation of the appellees to build the house, as expressed by the contract; and for any breach of this implied promise or obligation by the appellant, he was equally liable as upon an express promise."

It is, therefore, clear that if, before the building had been destroyed by the storm a definite sum of money was due to the plaintiff under the stipulation of the contract, for work done, and which the defendant refused to pay, and if, after the occurrence of the storm, the plaintiff was ready and willing to rebuild said factory and warehouse according to the terms of the contract, and was prevented by the defendant from so doing, two distinct breaches of the contract were thereby committed by the defendant, for both, either of which a right of action accrued to the plaintiff. For both of said alleged breaches the plaintiff seeks to recover in this suit. But he has combined the two distinct causes of action in one count of his declaration. He seeks to recover for the failure to pay the installments due, and also to recover damages for the refusal of the defendant to permit him to perform the contract. This vice is found in all the counts. The whole declaration is a flagrant example of duplicity in pleading. *Chitty on Pleading*, 225; *Poe on Pleading*, vol. 1, secs. 733–737. This defect in pleading may now be taken advantage of by a general demurrer. *Stearns* v. *The State*, 81 Md. 341; *State* v. *McNay*, 100 Md. 625.

We, therefore, find no error in the action of the Court below in sustaining the demurrers to each count of the declaration, and in entering the judgment for the defendant upon the refusal of the plaintiff to amend the declaration. But if the facts set out in the record be true, the plaintiff has substantial grounds of action against the defendant, and it would be a reproach to the administration of justice if he were denied the right to have his case heard upon its merits merely because of errors in the pleading, or mistake of judgment in the pleader in not making the proper amendments. In order to avoid such injustice, it is provided by *Art. 5, sec. 22, Code, 1904,* as follows: "In all cases where judgment shall be reversed or affirmed by the Court of Appeals, and it shall appear to the Court that a new trial ought to be had, such new trial shall be awarded, and a certified copy of the opinion and judgment of the Court of Appeals shall be transmitted forthwith to the Court from which the appeal is taken, to the end that said cause may be again tried as if it had never been tried; and no writ of *procedendo,* with transcript of record, shall be transmitted, as heretofore practiced."

It was said in *Creager* v. *Hooper,* 83 Md. 504, that under the above quoted section, "this Court is vested with discretionary power when in its judgment the ends of justice will be promoted, to remand a case to the lower Court for trial upon its merits. This is manifestly a case for the exercise of its discretion. The merits of the controversy have never been passed upon by the Court, nor has the case ever been in the condition that they could be passed upon, and not to remand it would be neither more nor less than a denial of justice." The case of the *State, use of Dodson* v. *The Baltimore & Lehigh R. R. Co.,* 77 Md. 489, presented a situation very similar to the one under consideration. In that case the plaintiff had filed an amended declaration to which the defendant demurred. The Court sustained the demurrer and entered judgment for the defendant. The plaintiff appealed. This Court held the pleading insufficient, and affirmed the judgment, but remanded the case for trial upon its merits. JUDGE BRYAN, who delivered

the opinion of the Court, said : "We think it just, under the circumstances, to remand the case, in order that the declaration may be amended, and the case be brought to trial on its merits, although we shall affirm the judgment." The circumstances of this case, in our opinion, warrant the exercise of the discretionary power vested in this Court under the Act.

> *Judgment affirmed and cause remanded*
> *for a new trial, the appellant to pay*
> *the costs.*