[L. A. No. 2387.   Department One.—December 16, 1909.]

## LOS ANGELES GAS AND ELECTRIC COMPANY (a Corporation), Appellant, v. AMALGAMATED OIL COMPANY (a Corporation), Respondent.

CONTRACT FOR SALE OF ALL OIL REQUIRED IN BUSINESS—ENTIRE CONTRACT—DEPENDENT COVENANTS—PERFORMANCE BY PURCHASER—PAYMENT IN MONTHLY INSTALLMENTS.—A contract whereby the seller agrees to sell and deliver to the purchaser, and the latter agrees to purchase and receive from the former, for a specified period of years, all the oil required by the purchaser for use in its business over and above certain specified exceptions, at a fixed price per barrel, to be paid monthly for all oil delivered during the preceding month, is entire and mutually dependent with respect to the covenants to sell and purchase, and the purchaser cannot maintain an action against the seller for a failure to deliver, without alleging and showing either performance, or a sufficient excuse for nonperformance of its obligation to take of the seller all the oil required in its business over and above the specified exceptions.   The fact that the purchaser did not agree to take any specified quantity of oil is immaterial.

ID.—SEVERABILITY OF CONTRACT.—Such contract was not severable into as many distinct agreements of sale as there were months in the term during which deliveries were to be made.   A contract will be treated as entire even when the obligations of one party consist of different acts to be separately paid for, where the nature and character of the agreement show that it was intended to be entire.

ID.—SEPARATE ENFORCEMENTS OF PAYMENTS FOR INSTALLMENTS.—The entirety of the contract with regard to the obligations to buy and sell the whole amount contracted for was not affected by the fact that the payment for installments actually delivered might be enforced separately after they became due.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Wm. A. Cheney, Herbert J. Goudge, T. E. Gibbon, and Frank J. Thomas, for Appellant.

Ward Chapman, Warren E. Lloyd, and O'Melveny, Stevens & Milliken, for Respondent.

SLOSS, J.—Action to recover damages for an alleged breach of contract. At the trial the defendant's motion for nonsuit was granted and a judgment of dismissal entered. From this judgment plaintiff appeals.

The contract involved was in writing, and was executed by the Associated Oil Company, as party of the first part, and the Los Angeles Gas and Electric Company, the plaintiff herein, as party of the second part. The defendant Amalgamated Oil Company succeeded to all the rights and obligations of the Associated Oil Company under the contract and may, for the purposes of this discussion, be considered as having in the first instance entered into said contract with plaintiff. In the interest of brevity we shall herein designate the plaintiff as the gas company and the defendant as the oil company.

By the terms of the contract, which is dated the first day of February, 1905, the oil company agrees to sell and deliver to the gas company, and the latter agrees to purchase and receive from the former, a sufficient quantity of crude oil to operate all plants now or hereafter to be operated by the gas company in its business of manufacturing gas and electricity in the city of Los Angeles over and above the amounts heretofore contracted for to be delivered to the gas company by others than the oil company during the term of the contract. The term of the agreement is declared to be from February 1, 1905, to December 31, 1910, inclusive. In addition to various provisions regarding the character of oil to be furnished, the manner of delivery and deductions for impurities, the contract provides that the gas company shall give three days' notice of its requirements, and fixes the purchase price at forty-five cents per barrel, payments to be made on the fifteenth day of each month for all oil delivered during the preceding calendar month.

The complaint alleges that after making various deliveries during the years 1905 and 1906, the defendant on December 31, 1906, notified the plaintiff that it no longer considered itself bound by the contract. On several occasions during January and February, 1907, the gas company, plaintiff, requested and demanded of the defendant oil company that it furnish and deliver to plaintiff a quantity of crude oil aggregating 24,700 barrels. Of this amount 11,616 barrels was the quantity of oil sufficient (over and above the oil otherwise contracted for as provided in the aforesaid contract) to oper-

ate plaintiff's plants. The plaintiff, it is alleged, has duly performed all the obligations imposed on it under the contract, but defendant has refused to deliver any of the oil demanded during said months of January and February, 1907. The lowest market value of oil of the quality described in the contract since the first day of January, 1907, was seventy-five cents per barrel. The prayer of the complaint is for $3484.80, being the difference between the contract price and the market value of the 11,616 barrels, which, as plaintiff claims, the defendant should have delivered.

Of the answer it will be sufficient to say that it denies that "plaintiff has duly, or at all, performed all, or any, of the obligations imposed on it under the said contract."

At the trial there was no dispute about the terms of the contract, the refusal to deliver on demand as alleged, or the market value of oil at and after the refusal. The gas company did not, however, make any attempt to show that it had during the period prior to January, 1907, demanded or received from the oil company a quantity of oil (over and above amounts otherwise contracted for) sufficient to operate its plants. The motion for a nonsuit was based on the failure to produce evidence on this point, and, stating the same proposition in more general terms, that plaintiff had failed to prove its allegation that it had duly performed all the obligations imposed on it under said contract.

By the agreement the gas company agreed to take of the oil company, and pay for, all the oil required by it over and above specified exceptions. The oil company agreed to deliver as called for all such oil at a given price. If the contract is to be construed as entire with respect to these covenants—in other words, if such covenants were mutually dependent—the court below was clearly right in holding that plaintiff could not recover for a failure to deliver without alleging and showing either performance, or a sufficient excuse for the nonperformance, of its obligation to take of defendant all oil required to operate its gas and electric plants. (*Daley* v. *Russ,* 86 Cal. 115, [24 Pac. 867]; *Easton* v. *Montgomery,* 90 Cal. 307, 318, [25 Am. St. Rep. 123, 27 Pac. 280]; *Merchant* v. *Hayes,* 117 Cal. 670, [49 Pac. 840].)

The appellants' contention is that the contract was severable into as many distinct agreements of sale as there were

months in the term during which deliveries were to be made. We do not regard this position as tenable. Whether a contract is entire or severable is a question of interpretation. The intent of the parties is to be ascertained from a consideration of the language employed and the subject-matter of the contract. (2 Parsons on Contracts, 9th ed., 672; *Sterling* v. *Gregory,* 149 Cal. 120, [85 Pac. 305].) It is, no doubt, well settled, as has been repeatedly declared by this court, that "when the price is expressly apportioned by the contract, or the apportionment may be implied by law, to each item to be performed, the contract will generally be held to be severable." (*More* v. *Bonnet,* 40 Cal. 251, [6 Am. Rep. 621] ; *Herzog* v. *Purdy,* 119 Cal. 99, [51 Pac. 27] ; *Sterling* v. *Gregory,* 149 Cal. 120, [85 Pac. 305].) But this rule is not universal. It is subject to the limitation that a contract will be treated as entire, even when the obligations of the one party consist of different acts to be separately paid for, where the nature and character of the agreement show that it was intended to be entire. Thus, in *Norris* v. *Harris,* 15 Cal. 227, Field, C. J., said: "But a contract, made at the same time for different articles at different prices is not an entire contract, *unless the taking of the whole is essential from the character of the property, or is made so by the agreement of the parties . . ."* Similarly, in *Wooten* v. *Walters,* 110 N. C. 251, [14 S. E. 734, 736], cited by this court in *Sterling* v. *Gregory,* 149 Cal. 120, [85 Pac. 305], the "more reasonable rule" is said to be that "where there is a purchase of different articles at different prices at the same time, the contract would be severable as to each article, *unless the taking of the whole was rendered essential either by the nature of the subject-matter or by the act of the parties."*

In the case of the contract before us, we have no doubt that the subject-matter and the stipulations of the parties were such as to make the taking of the oil contracted for essential to the right to demand further deliveries. The seller undertakes to hold itself in readiness to meet all the requirements of the buyer and to fill these requirements at a given price. In return it has the privilege of supplying at that price all oil that the buyer may require for its plant. These provisions—the obligation to furnish and the obligation to take all oil needed—are necessarily reciprocal. Each goes to the

essence of the agreement. It is not to be supposed that the oil company would have been willing to bind itself to furnish oil for a term of years at forty-five cents a barrel, regardless of the actual state of the market, unless it had been assured a continuous outlet for a large quantity at that figure. And, on the other hand, the gas company was, as must be assumed, undertaking to buy oil of the oil company at a fixed price in view of the fact that it was by the agreement securing a steady supply which would be sufficient for all its needs. To hold such a contract severable would open the way to great hardship and injustice. Either party could refuse compliance with the agreement when it desired and still hold the other when conditions made such course advantageous. The one in default would, to be sure, be liable in damages for its breaches of the several contracts, but such liability would be far from an adequate protection to the other party. Let us suppose, for example, that for a period of two years after the making of the contract the market value of oil should be less than the contract price and that during that time the gas company should find it to its interest to fill its requirements by purchasing of others than the defendant. In such event, the oil company would, under appellant's contention, be bound to continue to hold itself in readiness, during the entire term of the contract, to furnish oil if called for, and to seek its only relief for past breaches by actions for damages. While it could not know whether its future output would or would not be taken by the gas company, it could not safely enter into any contract to dispose of that output to others. Such construction of the contract would produce great confusion and uncertainty and would, to a great extent, deprive the parties of the substantial benefit of the respective covenants to take and to furnish all oil required.

The fact that the gas company does not agree to take any specified quantity of oil is of no consequence. It agrees to take all that may be needed in the operation of its plants. The exact quantity is subject to fluctuation with the conditions of its business, but the seller does not thereby forfeit the right to insist on furnishing all that shall be actually required. The agreement does not, in respect to the point under discussion, differ from one for the purchase and sale of a fixed quantity to be delivered and paid for in install-

ments. While there is some conflict among the decided cases, the great weight of authority, at least in the United States, supports the proposition that such agreements are entire and that a refusal without sufficient cause by the seller to furnish, or by the buyer to take or pay for, any installment, justifies a repudiation of the contract by the party not in default. (2 Mechem on Sales, secs. 1144-1148.). The rule has been applied alike to contracts for the sale of fixed quantities and to those calling for the delivery of amounts to be fixed by the requirements of the buyer's plant or business. (*Norrington* v. *Wright*, 115 U. S. 188, [6 Sup. Ct. 12]; *Williams Cooperage Co.* v. *Scofield*, 115 Fed. 119; *Loudenback Fertilizer Co.* v. *Tennessee Phosphate Co.*, 121 Fed. 298; *Kokomo Strawboard Co.* v. *Inman*, 134 N. Y. 92, [31 N. E. 248]; *George H. Hess Co.* v. *Dawson*, 149 Ill. 138, [36 N. E. 557]; *King Philip Mills* v. *Slater*, 12 R. I. 82, [34 Am. Rep. 603]; *Providence Coal Co.* v. *Coxe*, 19 R. I. 380, [35 Atl. 210]; *Fullam* v. *Wright etc. Co.*, 196 Mass. 474, [82 N. E. 711]; *Pacific Lumber Co.* v. *Iowa W. & P. Co.*, 135 Iowa, 308, [112 N. W. 771]; *Ross Meehan F. Co.* v. *Royer Wheel Co.*, 113 Tenn. 370, [83 S. W. 167].) The same conclusion has been reached by this court in two cases. In *Twomey* v. *Peoples' Ice Co.*, 66 Cal. 233, [5 Pac. 158], the defendant agreed to furnish ice to plaintiffs for one year at the rate of five dollars a ton, the vendor agreeing to sell ice to plaintiffs alone and the plaintiffs agreeing to take ice from the defendant alone during the term of the contract. The plaintiffs having broken the contract by purchasing ice from third parties, it was held that this breach released defendant from any further performance. To the same effect, substantially, is *Dunn* v. *Daley*, 78 Cal. 640, [21 Pac. 377].

The holding that the contract is entire with respect to the covenants we have been discussing is in no wise inconsistent with the view that it is apportionable with respect to payments for oil actually delivered. (2 Parsons on Contracts, 9th ed., 673, note.) An action could be maintained for the price of any delivery as soon as it became due. This is the holding, and the extent of the holding, in *Veerkamp* v. *Hulburd etc. Co.*, 58 Cal. 229, [41 Am. Rep. 265]. But, as we have said, the contract may be entire with regard to the obligations to buy and sell the whole amount contracted for, notwithstanding

the fact that payments for installments actually delivered may be enforced separately. (*Dunn* v. *Daley*, 78 Cal. 640, [21 Pac. 377]; *Barrie* v. *Earle*, 143 Mass. 1, [58 Am. Rep. 126, 8 N. E. 639]; *Milske* v. *Mantel Co.*, 103 Md. 235, [115 Am. St. Rep. 354, 63 Atl. 471].)

For these reasons it must be held that the motion for nonsuit was rightly granted.

The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.