[L. A. No. 3240.    In Bank.—July 3, 1914.]

## LOS ANGELES GAS & ELECTRIC CORPORATION (a Corporation), Appellant, v. AMALGAMATED OIL COMPANY (a Corporation), Respondent.

Contract—Action to Recover Damages for Breach—Failure of Plaintiff to Perform Covenants.—A party cannot recover damages for the breach of an entire contract if he himself has failed, without lawful cause, to perform the covenants, upon compliance with which the obligations of the defendant were dependent.

Id.—Agreements of Gas Company to Purchase Oil From Different Oil Companies—Breach of Contract.—Where a gas company agrees with one oil company to buy from it not less than twelve thousand five hundred, nor more than fifteen thousand barrels of oil per month, and also agrees to buy from another oil company sufficient oil, over and above the amount contracted for from the first oil company, to operate its gas plants, the gas company breaches its contract with the latter oil company if in some months it purchases less than the minimum and in other months more than the maximum quantity from the first oil company. Hence it cannot recover damages for a subsequent breach by the second oil company of its contract, and it is immaterial that the aggregate amount of oil taken from the first oil company did not exceed the sums of the maximum amounts of fifteen thousand barrels per month, computed for the entire period.

Id.—Action for Breach of Contract—Breach by Plaintiff—Absence of Waiver by Defendant.—In this action by a gas company to recover from an oil company for breach of a contract by the oil company to deliver a sufficient quantity of oil, over and above the amounts already contracted for by the gas company with another oil company, to operate the gas company's plants, the findings that the plaintiff had repeatedly broken its contract with the defendant by purchasing different amounts from those agreed upon from the other oil company, and that such breaches had not been waived by the defendant, are supported by the evidence.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank G. Finlayson, Judge.

The facts are stated in the opinion of the court.

Wm. A. Cheney, Herbert J. Goudge, and Le Roy M. Edwards, for Appellant.

Ward Chapman, Hatch & Lloyd, Hunsaker & Britt, and O'Melveny, Stevens & Millikin, for Respondent.

SLOSS, J.—This action was brought to recover damages for the alleged breach of a contract for the sale by the Associated Oil Company to the Los Angeles Gas & Electric Company of a sufficient quantity of oil (over and above the amounts already contracted for with other parties) to operate its gas and electric plants from February 1, 1905, to December 31, 1910. The plaintiff is the successor of the Los Angeles Gas & Electric Company. The contract was assigned by the Associated Oil Company to the defendant, Amalgamated Oil Company. We shall in this opinion refer to the plaintiff or its predecessor as the Gas Company, and to the defendant, Amalgamated Oil Company, or its assignor, as the Oil Company.

The contract has already received consideration at the hands of this court in *Los Angeles Gas & Electric Co. v. Amalgamated Oil Co.*, 156 Cal. 776, [106 Pac. 55], and its main features are set forth in the opinion there filed. In that action the plaintiff had sought to recover damages for the failure of the defendant to deliver certain oil demanded during the months of January and February, 1907. The plaintiff's allegation of performance on its part of all the obligations of the contract was put in issue by the answer. No evidence in support of the allegation was introduced by the plaintiff and the defendant's motion for nonsuit was granted by the court. On the appeal the plaintiff's contention was that the contract was severable "into as many distinct agreements of sale as there were months in the term during which deliveries were to be made." The holding of this court was, however, that the contract was entire with respect to the covenants on the one part to take, and on the other to furnish, the oil required for the operation of plaintiff's plants during the specified term. This being so, it was incumbent on plaintiff to prove, as a prerequisite to its right to recover damages for the failure to deliver oil in January and February, 1907, that it had up to that point complied with its obligation to receive from the defendant all oil which it had contracted to take. Proof on this point lacking, the nonsuit was held to have been properly granted.

Thereupon the present action was commenced to recover damages for the entire period remaining after the refusal of the defendant in December, 1906, or January, 1907, to deliver any more oil. In this action, as in the former one, the com-

plaint alleged performance by the Gas Company of all the obligations imposed upon it under the contract. It alleged that on December 31, 1906, the defendant gave written notice to the Gas Company that said defendant no longer considered itself bound by the contract; that subsequent to said date the Gas Company demanded of the defendant that it furnish a quantity of crude oil and that defendant refused to deliver said or any crude oil under the contract. It further alleged that, prior to the thirty-first day of December, 1906, the defendant had violated the contract by delivering to the Gas Company at various times in place of crude oil, as required and ordered under the terms of said contract, oil which had been "topped, skimmed and from which had been removed by defendant the more volatile and lighter parts." Such topped oil, it was alleged, was inferior to crude oil in gas making qualities. The Gas Company was not aware that the oil thus delivered had been topped until after the abandonment of the contract by the Oil Company. Damages were prayed for in the sum of $441,857.25.

The answer denies the performance by the Gas Company of all the obligations imposed upon it by the contract. It alleges that the notice of December 31, 1906, and the Oil Company's refusal thereafter to make any deliveries of oil under the contract, were caused by the breaches and violations of the contract theretofore committed by the Gas Company. It is admitted that the Oil Company delivered some sixty-seven thousand barrels of topped oil to the Gas Company, but denied that such topped oil was inferior in gas making qualities to crude oil. The answer also pleads that the action is barred by the provisions of section 339 of the Code of Civil Procedure. By amendments to the pleadings, issues were raised with respect to the receipt by plaintiff from the Union Oil Company, E. A. Summers, and R. F. Joyce of certain quantities of oil, in violation, as the defendant contended, of plaintiff's obligation to take from the defendant all oil required in the operation of the plants over and above the exceptions specified in the contract. The plaintiff's contentions, on the other hand, were and are that these purchases from the Union Oil Company and others, were not in violation of defendant's rights under the contract, and that in any event the defendant had waived all objections to such purchases. The statement of further particulars with respect to

these purchases may be deferred until we come to a discussion of the points of law made in connection therewith.

The court found that the defendant had violated the contract by delivering topped oil as alleged in the complaint, but that no such oil was delivered at any time prior to March 20, 1906. It found, in effect, that the plaintiff had committed a breach of the contract by purchasing five thousand eight hundred barrels of oil from one Joyce during the year 1905, and that defendant had no knowledge of such purchase at any time prior to December 31, 1906, and never consented to the delivery of such oil by Joyce. It further found that the plaintiff had violated the contract by making purchases of oil from the Union Oil Company during the years 1905 and 1906, and that defendant did not consent to such purchases. It found, also, that the cause of action stated in the complaint was barred by section 339 of the Code of Civil Procedure. As conclusions of law it determined that plaintiff was not entitled to take anything by its action and that defendant was entitled to judgment for its costs. Judgment in accordance with these conclusions followed. The plaintiff appeals from the judgment.

The appellant founds its demand for a reversal upon the claim that several of the findings above outlined are contrary to the evidence. Without regard to the finding that the action was barred by limitation, it is in effect conceded, as it necessarily must be, that judgment in favor of the defendant necessarily followed from the findings that the plaintiff had violated the contract in material respects before any breach had been committed by the defendant, and that such violations by the plaintiff had not been waived by the defendant. A party cannot recover damages for the breach of an entire contract if he himself has failed, without lawful cause, to perform the covenants, upon compliance with which the obligations of the defendant were dependent. Thus, in this case, a failure by the Gas Company to take from the Oil Company all of the oil agreed to be taken (or, which is the same thing, the taking of such oil from others) would deprive the plaintiff of the right to complain of the subsequent refusal of the defendant to furnish oil agreed to be delivered. This is the statement of an elementary rule, which requires, for present purposes, no citation of authority beyond the decision, already referred to, in the former litigation between the same parties.

(*Los Angeles Gas & Elec. Co.* v. *Amalgamated Oil Co.,* 156 Cal. 776, [106 Pac. 55].) If, then, the findings that defendant committed no breach prior to March 20, 1906; that plaintiff had theretofore repeatedly broken the contract by purchasing oil from the Union Oil Company, and that such breaches had not been waived, are supported by sufficient evidence, we need look no further. We are satisfied that these findings are amply sustained by the record, and shall, therefore, have no occasion to discuss other interesting questions presented by counsel, such as the correctness of the lower court's determination that the action was barred, or the legal consequences resulting from the findings that some of the breaches committed by plaintiff were subsequent to breaches committed by the defendant.

The oil which the Gas Company bound itself, by this contract, to take from the Oil Company, was "a sufficient quantity of crude oil to operate" its plants, "over and above the amounts heretofore contracted for to be delivered to said second party (Gas Company) during the term of this contract by others than said first party (Oil Company)." A list of said contracts and the amounts of oil covered thereby was referred to in the main contract and attached to it as an exhibit. The exhibit listed four contracts, all between the Gas Company and the Union Oil Company. Two of them are described as follows:

"1905. Union Oil Co. of Cal. not less than 12,500 nor more than 15,000 bbls. per month.

"1906. Union Oil Co. of Cal. Not less than 12,500 nor more than 15,000 bbls. per month."

The other two are for later periods, and are not important in the matter now under discussion.

These contracts between the Gas Company and the Union Oil Company were introduced in evidence. By a contract dated January 11, 1904 (described in the record as Exhibit BE), the Union Oil Company agreed to sell, and the Gas Company agreed to buy during the term of two years, sixty thousand barrels of oil, at the rate of not more than thirty thousand barrels per annum, nor more than two thousand five hundred barrels per month. On February 17, 1904, a second contract (Exhibit BF) between the same parties was made, whereby the Union Oil Company agreed to sell and deliver, and the Gas Company to buy and receive, "fuel oil to the

amount of, not to exceed 12,500 barrels per month nor less than 10,000 barrels per month from the date hereof to and including December 31st, 1905, and not to exceed 15,000 barrels per month, nor less than 12,500 barrels per month during the calendar year 1906.'' These provisions were followed by stipulations covering grade and deliveries. It will be observed that the contract of January 11, 1904 (Exhibit BE), and that of February 17, 1904 (Exhibit BF), overlapped for the year 1905. Adding to the latter contract the two thousand five hundred barrels per month provided for by the earlier one, it may properly be said that the parties had contracted for a delivery of not less than twelve thousand five hundred barrels, and not more than fifteen thousand barrels per month during the two years 1905 and 1906. And thus the contracts are described in the exhibit attached to the agreement between the parties to this action.

The court finds that during these years the gas company did order and receive from the Union Oil Company "for and during certain of the calendar months of said period less than 12,500 barrels per month, and for and during certain other calendar months of said period more than 15,000 barrels of oil per month." This finding is, as appellant concedes, supported by the evidence. Thus, taking a few months as examples, we find that in March, 1905, the Gas Company received from the Union Oil Company, 17,259 barrels, in April, 1905, 20,384 barrels, in December, 1905, 32,866 barrels, in January, 1906, 28,835 barrels, while in May, June, and July, 1905, the receipts were, respectively, 5157, 9981, and 8912 barrels. These months were all prior to March, 1906, when, as the court finds, the defendant made its first breach of the contract by commencing the delivery of topped oil. It may be remarked, however, that the receipt of oil from the Union Oil Company in quantities of more than fifteen thousand or less than twelve thousand five hundred barrels continued during the rest of 1906, the plaintiff thus receiving, in the months of November and December, 1906, in excess of sixty thousand barrels. With the exception of this item of sixty thousand barrels, the aggregate of the oil received from the Union Oil Company, as the court finds, "did not exceed the amount of oil which said Union Oil Company of California by the contracts referred to in the schedule attached to said contract" (i. e., the

one here sued upon) ''undertook to deliver during the years 1905 and 1906.'' It may be remarked in passing that this is not, as appellant contends, a finding that the Gas Company did not, in the aggregate, purchase of the Union Oil Company more oil than it was entitled to take from that company. The sixty thousand-odd barrels taken in November and December, 1906, are expressly excepted from the calculation. But without regard to this point, we are brought to consider the question lying at the base of the branch of the case now under discussion, viz., whether the Gas Company violated the provisions of its contract with the Oil Company by taking oil from the Union Oil Company in quantities greater than the monthly maximum or less than the minimum called for by the terms of its contract with the said Union Oil Company. We entertain no doubt that this question must be answered here, as it was in the court below, in the affirmative. The construction of the contract between the parties herein, as affected by the contracts with the Union Oil Company, therein referred to, was discussed by the learned trial judge in an opinion, from which we quote as follows:

''The contract which is the basis of this action, i. e., the contract between the Gas Company and the Associated Oil Company, requires the latter, during the term of the contract, to furnish the Gas Company with all the crude oil necessary to operate its plant excepting only such oil as had theretofore been 'contracted for to be delivered' to the Gas Company by the Union Oil Company. The oil which the Gas Company had contracted for to be delivered by the Union Oil Company was not a fixed monthly quantity. For the years 1905 and 1906 it was a monthly amount not less than 12,500 barrels nor more than 15,000 barrels. The contract with the Union Oil Company required the latter to deliver to the Gas Company during each month of said two years an indefinite quantity of oil—a quantity ranging somewhere between said minimum and maximum amounts. None of these indefinite monthly quantities, ranging somewhere between said maximum and minimum quantities, became definite, fixed or certain until in a particular month the Gas Company had ordered and received from the Union Oil Company the quantity for that particular month—a quantity not less than 12,500 nor more than 15,000 barrels. When, however, the Gas Company had actually received from the Union Oil Company, in any

particular month, a quantity of oil, ranging somewhere between 12,500 barrels and 15,000 barrels, the quantity so received for that month became the quantity 'contracted for to be delivered' to the Gas Company for that month.

"The contract between the Gas Company and the Oil Company—the contract for the alleged breach of which plaintiff is seeking damages—was a contract for oil to be used in the Gas Company's plants. The contract contemplates that it shall be so used and not otherwise.

"The contract between the Amalgamated Oil Company and the Gas Company did not call for monthly deliveries nor even weekly or daily deliveries; nor did it fix any prescribed period or periods of time during which deliveries should be made. By it the Oil Company agreed to furnish and the Gas Company agreed to receive all the oil necessary to meet the latter's 'requirements' in the manufacture of gas and electricity, except such as had theretofore been 'contracted for to be delivered to' the Gas Company by the Union Oil Company. The Gas Company's plants were in operation day and night—in practically continuous operation. It was necessary that it should always have on hand quantities of oil sufficient to operate its plants. The maximum monthly amounts which it had contracted for to be delivered by the Union Oil Company were not sufficient for its requirements in all the months of the year. Its business required it to have on hand at all times or practically at all times, oil furnished by the defendant. This amount necessarily fluctuated. It was not the same at all the seasons of the year. But the defendant or its assignor was required to be prepared to make 'runs' into plaintiff's tanks on receiving from plaintiff 'three days' notice of its requirements.' So that, while the contract did not require the Oil Company to make monthly or even weekly or daily deliveries, it did contemplate a continuous series of deliveries—deliveries running over the whole term of the contract—and made whenever and as often as the Gas Company's requirements might necessitate, conditioned only by the Oil Company's right, before making any delivery, to receive three days' notice of the amount required by the Gas Company.

"So far, I have treated the clause in the contract between the Amalgamated Oil Company and the Gas Company in which reference is made to the prior contracts, as a clause

providing that the Amalgamated Oil Company shall deliver all oil sufficient to operate the Gas Company's plant over and above the 'oil' theretofore 'contracted for to be delivered' by the Union Oil Company. But the provision is that the Amalgamated Oil Company shall furnish all the oil sufficient to operate the Gas Company's plants over and above the '*amounts*' theretofore contracted for to be delivered by the Union Oil Company. And it may be argued that inasmuch as the Oil Company was to sell and deliver the oil sufficient to operate the Gas Company's plants, except the *amount* of oil contracted for to be delivered by the Union Oil Company, the Gas Company could add together all the maximum deliveries which it had the right to purchase and receive from the Union Oil Company, thus laying the foundation for the assertion of a right to cumulate the difference between the monthly amounts actually received from the Union Oil Company, in the months when it received less than the prescribed maximum, and the maximum amounts provided in the contracts with the Union Oil Company. But I am of the opinion that the result is the same, whether we read the clause in question as a provision excepting from the Gas Company's total requirements the '*oil* contracted for to be delivered' by the Union Oil Company or the *amounts* 'contracted for to be delivered' by the Union Oil Company. The reference is not to an aggregate amount, but to amounts. The amounts are monthly amounts. They are not, as has been shown, fixed or definite amounts. The monthly amount to be purchased and received from the Union Oil Company remained indefinite and uncertain until it was actually purchased for the month in which it was to be used by the Gas Company. When purchased, and not before, it became the amount 'contracted for to be delivered' in or for the particular month for which it was purchased.

"The Gas Company, of course, was not obligated to purchase and receive from defendant, or its assignor, *in* any particular month the oil necessary to meet its requirements during that month,—over and above the amount purchased and received by it in that month from the Union Oil Company. So much of the oil furnished by the defendant as the Gas Company was obligated to purchase or receive from the defendant *for* any particular month, it could purchase and receive from the defendant in some prior month or months. But if for any month the Gas Company purchased and received from

the Union Oil Company a quantity of oil exceeding the maximum fixed in its said contracts with the Union Oil Company, —thus decreasing the amount of oil which the defendant would otherwise have furnished for that month,—or if for any month the Gas Company purchased and received from the Union Oil Company a quantity of oil less than the minimum fixed in its said contracts with the Union Oil Company,—thus increasing the amount of oil which the defendant would otherwise have furnished for that month,—the Gas Company would be guilty of a breach of its contract with the Oil Company.

"From the foregoing it follows that the Gas Company, without violating its contract with the Associated Oil Company, could not cumulate the difference between the minima and maxima prescribed in its contracts with the Union Oil Company and receive and use such cumulations. Though the contract between the Gas Company and the Associated Oil Company was an entire contract and one which contemplated a continuous series of deliveries, covering the whole term of the contract, the contracts with the Union Oil Company contemplated monthly purchases and deliveries, i. e., the purchase of and receipt in each and every month of a quantity of oil not less than a prescribed minimum nor more than a prescribed maximum,—an amount which, when ascertained at the end of the month, became the amount 'contracted for to be delivered' during that month by the Union Oil Company.

"For the same reason, the defendant, without violating its contract with the Associated Oil Company, could not anticipate in any month deliveries due from the Union Oil Company in future months. To the extent that by such anticipations the Gas Company purchased and received for any one month oil above the maximum prescribed for that month in its contracts with the Union Oil Company, it decreased the amount which the defendant would otherwise have furnished for that month. And, since the right to such anticipations is not given to the Gas Company in any of its contracts with the Union Oil Company, deliveries of such anticipations are not deliveries of oil 'contracted for to be delivered to' the Gas Company under any contract made by it with the Union Oil Company, and, therefore, such deliveries of anticipated oil, to the extent that they decreased the oil which the defendant would otherwise have furnished in or for any particular

month, are breaches of the contract between the Gas Company and the Oil Company (Associated Oil Company).

"It is reasonable to infer that the Gas Company used in the operation of its plants all the oil which it ordered and received from the Union Oil Company; and, therefore, it is reasonable to infer that if, in any particular month, the Gas Company ordered and received from the Union Oil Company an amount of oil less than the minimum prescribed in its contract with the Union Oil Company, the defendant was called upon to supply for the Gas Company's needs, in operating its plants during that month, an amount of oil in excess of the amount which, under the contract between the Gas Company and the Associated Oil Company, the defendant could rightfully be called upon to supply for that month; and, in the same manner, it is reasonable to infer that if, in any particular month, the Gas Company ordered and received from the Union Oil Company an amount greater than the maximum prescribed in its contracts with the Union Oil Company, the defendant was called upon to supply for the Gas Company's needs in operating its plants an amount of oil less than the amount which, under the contract between the Gas Company and the Associated Oil Company, it was rightfully entitled to supply for that month."

We think the passages just quoted afford a sufficient and convincing refutation of the appellant's claim that the oil company was not concerned with the amounts of oil taken in the several months of 1905 and 1906 from the Union Oil Company, provided only that the aggregate so taken did not exceed the sum of the maximum amounts of fifteen thousand barrels per month, computed for the entire period. In the interpretation of contracts, so much depends upon the language used by the parties in the particular case, that it is often impossible to find decisions which furnish any real assistance in solving the problem presented. In the present instance, we content ourselves with citing *Central Oil Co.* v. *Southern Refg. Co.,* 154 Cal. 165, [97 Pac. 177], as a case which lends substantial support to the construction here approved.

The finding that the breaches which we have been discussing were not waived by the defendant is supported by sufficient evidence. The record is a very large one, and we must limit ourselves to a mere reference to the testimony which we re-

gard as affording justification for the court's finding. While the defendant did, in December, 1905, receive a letter from plaintiff stating that said plaintiff was ''at present receiving the balance of oil to make deliveries the maximum, as contracted for with the Union Oil Company,'' the testimony of defendant's officers and agents was that they had no knowledge, until shortly before the repudiation of the contract, that the plaintiff had disregarded the limitations of its contract with the Union Oil Company. Giving to this letter its full force, the only information it conveyed was that, in December, 1905, the gas company was receiving amounts which, if delivered in prior months, would have been within the maximum of fifteen thousand barrels per month. There was no suggestion that theretofore, the deliveries had, in certain months, been short of the minimum, and, in others, in excess of the maximum contracted for. Waiver of a right presupposes knowledge of the facts which give the right, and the letter relied on falls far short of informing the defendant of the full extent of the breaches upon which it now relies. Furthermore, the contract was again broken by plaintiff in the months of January, February, and March, 1906, and these breaches were not brought to the attention of defendant by the letter of December 20, 1905.

For the same reasons, and others as well, the interview of January, 1906, in which an officer of defendant was advised of the taking of ''the accumulated quantity for 1905 under the Union contract,'' followed by the continued delivery of oil by the defendant thereafter, did not require the court to find that the plaintiff's violations of the contract in the matter of purchases from the Union Oil Company had been waived. It may be added that there was testimony that defendant, at the time of the interview last mentioned, notified the plaintiff that the right to receive accumulated balances was not conceded.

Of the issue regarding defendant's violation of the contract, it is sufficient to say that the evidence fully supports the finding that the defendant was guilty of no such violation prior to March 20, 1906.

The conclusions stated dispose of the case. It being held that the particular findings considered in this opinion are

supported by evidence, the judgment must stand, whether or not other contentions of the appellant be correct.

The judgment is affirmed.

Shaw, J., Melvin, J., Lorigan, J., Angellotti, J., and Henshaw, J., concurred.