## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### OF

# MASSACHUSETTS.

---

### GEORGE BARRIE *vs.* ENOCH EARLE.

Worcester. October 6. — 23, 1886. W. ALLEN, J., absent.

A contract by which one subscribes for a copy of a book, to be published in parts, at a certain price for each part, payment to be made for each part after delivery, is so far an entire contract, that the subscriber, after receiving one part and paying for it, cannot, without offering to return such part, set up, in defence to an action for damages for breach of the contract in refusing to take and pay for the other parts, that he was induced to enter into the contract by fraud.

A. subscribed for a book to be delivered in parts, at a certain price for each part. By the terms of the subscription paper, each copy of the book was to contain a special title bearing the name and address of its subscriber; and the publisher guaranteed to furnish impressions and paper equal in all respects to the specimen shown. The subscription paper also contained the clause, "No terms, conditions, or representations other than here printed will be binding on subscriber or publisher." In an action by the publisher against A. for breach of the contract, A. offered evidence of certain statements made by the plaintiff's agent to the defendant as to the place where the defendant's name and address would appear. This evidence was excluded. *Held*, that the defendant had no ground of exception.

A. and B., each of whom occupied a separate tenement in the same house, separately subscribed for a certain book, to be published in parts, each part to be delivered singly, and the subscriber's name to be printed on the title page. Two copies of a part were sent to the house occupied by A. and B., in one package, were there separated, and, by mistake, that with A.'s name on the title page was delivered to B., and that with B.'s name on the title page was delivered to A., the parts being in all other respects alike. This mistake was known to both

A. and B., but was not known to the publisher of the book, who, upon A.'s refusal to pay, brought an action against him for the price of the same. *Held*, that A., by not giving notice of the mistake in the delivery of the part, must be considered to have waived it.

CONTRACT for breach of an agreement in writing, the material parts of which were as follows:

"May 24, 1883.

"To George Barrie, Philadelphia.

"Sir: I hereby subscribe for one copy of the Art Treasures of America, in ten portfolios, at fifteen dollars each, as published, on the following terms of subscription, which terms of subscription cannot be altered or modified:

"1st. The Art Treasures of America, to be completed in 10 portfolios at $15 each.

"2d. Each portfolio to contain 16 impressions of photogravure plates, India-proofs, lettered, and 50 pages of text or full-page wood engravings.

"3d. The portfolios to be issued at intervals of about two months.

"4th. This edition is limited to twelve hundred copies, but no more copies will be issued than are subscribed for; and the publisher reserves the right at any time to advance the price to new subscribers.

"5th. Each copy of the work to contain a special title bearing name and address of its subscriber; and the publisher guarantees to furnish impressions and paper equal in all respects to the specimens shown.

"6th. Portfolios to be delivered, carriage prepaid. Payment only to be made for each portfolio after such delivery.

"7th. No terms, conditions, or representations other than here printed will be binding on subscriber or publisher; and the subscriber hereby acknowledges receipt of a copy of these terms.

"Enoch Earle."

The declaration also contained a count on an account annexed, the first item of which was, "Nov. 3, 1883. To Portfolio 3, Art Treasures, $15," and the second, "Jan. 26, 1884. To Portfolio 4, Art Treasures, $15."

The answer denied that the defendant signed the contract; alleged that, if he signed it, he was induced to do so by certain

false and fraudulent representations made by the agent of the plaintiff, that no portfolios were delivered to him, and that, if delivered, they were of no value, and not equal to the sample shown him, or as required by the terms of the contract; and denied that the plaintiff had performed his part of the contract, or that the defendant had refused to perform his part thereof.

Trial in the Superior Court, before *Hammond,* J., who allowed a bill of exceptions, in substance as follows:

The plaintiff introduced evidence tending to show that he delivered the first portfolio under said contract, by the Adams Express Company, at the house of the defendant, some time in July, 1883, for which he received, some time afterwards, a check for $15, from the defendant; that, some time in August or September following, the plaintiff, by said express company, delivered a second portfolio, under said contract, at the defendant's house, for which he afterwards received the defendant's check for $15; that, some time in October following, the plaintiff sent to the defendant's house by said express company another portfolio, which the defendant refused to take; and that the remaining seven portfolios were never delivered to the defendant, although the plaintiff had been ready to deliver the same, but the defendant refused to accept them, and notified the plaintiff of his refusal.

The defendant offered evidence to show that his signature to said contract was obtained by certain false and fraudulent representations made to him by the plaintiff's duly authorized agent, upon which representations the defendant relied; but, it being admitted by him that he had neither returned nor offered to return the portfolios received, as above stated, by him, the judge excluded this evidence.

The defendant also offered evidence of certain statements made by the plaintiff's agent to the defendant as to the place where his name and address would appear upon said portfolios, and the way and manner in which said name and address would be printed and would appear, as provided in the fifth clause of said contract; which evidence was excluded.

It appeared, or was admitted by the parties, that one Prentice, who occupied a tenement in the same house with the defendant, had made with the plaintiff a contract similar to the one

between the plaintiff and the defendant; that the portfolios for both Prentice and the defendant were sent in one package, and so delivered at the house; that, after arriving at the house, they were separated, and, by a mistake, those with Prentice's name on the title page were delivered to the defendant, and those with the defendant's name were delivered to Prentice, the books being in all other respects alike, and that these facts were known both to Prentice and the defendant; but that neither the defendant nor Prentice ever notified the plaintiff of these circumstances, and the plaintiff did not know of the mistake until after this action was brought. The judge ruled, that good faith upon the part of the defendant required that, if he intended to rely upon these circumstances as a non-delivery under the contract, he should have notified the plaintiff; and that, not having notified the plaintiff, he must be considered as having waived the defect, if any there was, in the delivery.

The defendant asked the judge to rule, that, under said contract, he was not bound, upon discovering the fraud practised upon him, either to return the portfolios received, or to receive the other eight. The judge refused so to rule, and ruled that, if the defendant desired to rescind the contract for fraud, he should have returned or offered to return the portfolios.

The jury returned a verdict for the plaintiff for $68.06, and the defendant alleged exceptions.

*J. R. Thayer,* (*E. H. Vaughan* with him,) for the defendant.

*G. T. Dewey,* (*T. G. Kent* with him,) for the plaintiff.

FIELD, J. The first exception is to the exclusion of evidence that the defendant's signature to the contract was obtained by false and fraudulent representations. This evidence was excluded upon the ground that the contract was entire, and that the defendant could not avoid it except by returning the two portfolios which he had received and paid for. The same question of law is involved in the last exception. A majority of the court are of opinion that this is such a contract as is described in *Badger* v. *Titcomb,* 15 Pick. 409, 413, where, "although the agreement is entire, the performance is several;" or, as is said in *Denny* v. *Williams,* 5 Allen, 1, 4, a contract "one and entire in its origin, and yet, looking to the performance of different things at different times, it may be divisible in its operation;"

that, although an action under it could be maintained for the price of each portfolio when it was delivered, yet that the contract is one entire agreement to take one copy of a publication, made up of ten parts or portfolios, all constituting the Art Treasures of America; and that it is not a contract containing ten distinct and independent agreements to take ten different portfolios, one under each agreement. See *Vinton* v. *King*, 4 Allen, 562. The defendant's evidence went to the whole contract, and was offered for the purpose of avoiding the whole contract, and he could only avoid the contract for fraud in its inception by rescinding it *in toto*, and by restoring to the plaintiff the portfolios which he had already received. If the defendant had a right to avoid the contract, and exercised that right, he had a defence to this action, and could recover, in an action brought by him, the thirty dollars he had paid, and the portfolios would all belong to the present plaintiff; but the defendant could not retain part of the portfolios under the contract, and avoid the contract as to the rest. *Clark* v. *Baker*, 5 Met. 452. *Morse* v. *Brackett*, 98 Mass. 205. *Mansfield* v. *Trigg*, 113 Mass. 350. *Young & Conant Manuf. Co.* v. *Wakefield*, 121 Mass. 91. It does not follow from this, that the defendant was required to receive any portfolios that were not such as the contract called for, or that, if the plaintiff did not from time to time offer to the defendant ten portfolios, each of which satisfied the description contained in the contract, the defendant might not recover damages for a breach of the contract by the plaintiff.

We are not certain that we understand the remaining exceptions. The defendant also offered evidence, which was excluded, of certain statements made by the plaintiff's agent as to the place where the defendant's name and address would appear upon said portfolios, and the way and manner in which said name and address would be printed and would appear, as provided in the fifth clause of said contract. It does not appear that the defendant offered evidence that the portfolios, in respect to the special title and the printing therein of the defendant's name and address, were not in conformity with the statements of the agent. The fifth clause of the contract was, " Each copy of the work to contain a special title bearing name and address of its subscriber; and the publisher guarantees to furnish impressions

and paper equal in all respects to the specimens shown." The evidence offered was, not that the portfolios did not contain a special title bearing the name and address of the subscriber, or were not " equal in all respects to the specimens shown " at the time the contract was made ; and it does not appear that the specimens shown did not contain an impression of a special title, complete in all respects except the name and address of the subscriber. The contract itself provided that "No terms, conditions, or representations other. than here printed will be binding on subscriber or publisher." It does not appear that the defendant ever complained of the manner in which his name and address were printed in the special title, or that this was one ground of his refusing to receive the portfolios.

Under these circumstances, we are not called upon to determine the extent and the application of the principle declared in *Stoops* v. *Smith*, 100 Mass. 63, to the various conceivable facts of this case. The defendant clearly has not shown that the evidence was admissible.

It appears that the third portfolio was sent to the defendant's house, and the defendant "refused to take" it, and afterwards refused to accept the remaining portfolios. It also appears that, after a package containing portfolios for the defendant and for Prentice, who occupied a tenement in the same house with the defendant, had been received at the defendant's house, the copy or copies with Prentice's name on them, by the mistake of somebody, were delivered to the defendant, and the defendant's copy or copies were delivered to Prentice. The portfolios were in all other respects alike. These were probably the first and second portfolios. This mistake was unknown to the plaintiff until after the suit was brought, and was known to both the defendant and Prentice, and it does not appear that the defendant could not have taken possession of his copy or copies whenever he wished, or had not in fact taken possession of them. As the defendant absolutely refused to receive the remaining portfolios, and notified the plaintiff of his refusal, and gave no notice of this mistake, and did not indicate in any manner that he relied upon it, he must be held to have waived it.          *Exceptions overruled.*