### GOIN v. CINCINNATI REALTY CO.

(Circuit Court of Appeals, Sixth Circuit.  November 7, 1912.)

No. 2,234.

INFANTS (§ 44*)—LEASE OF PROPERTY UNDER ORDER OF COURT—SUIT FOR CANCELLATION—ENTIRETY OF CONTRACT.

A minor, whose interest in remainder in real estate was leased for 99 years by authority of the court, with an option to the lessee to purchase at a stated price, cannot after reaching majority maintain a suit in equity for cancellation of the option clause in the lease, on the ground that the court had no power to authorize it, while retaining the benefit of the other provisions, for which such option was part consideration.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 95; Dec. Dig. § 44.*]

Appeal from the Circuit Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Suit in equity by Ellen M. Goin against the Cincinnati Realty Company.  Decree for defendant, and complainant appeals.  Affirmed.

In May, 1890, the appellant, then 13 years of age, owned an interest in remainder in the real estate herein involved.  Such interest arose under the will of her grandfather, and was subject to a life estate in her mother.  The exact character of the interest is not now important.  In 1890 all the adult parties in interest agreed that the premises should be leased to one Crosley at a net annual rental of $20,500 for a period of 99 years, renewable forever, and with an option to the lessee to purchase after 15 years at the price of $500,000.  There was no provision for revaluation to affect the rental, or for reappraisement to affect the price, but both sums were to continue unchanged.  Thereupon the adult parties applied to the court of common pleas, in Cincinnati, for an order approving such a lease, and appointing a trustee to make the same.  This application purported to be pursuant to a statute (R. S. Ohio, § 5803 et seq.), providing that, in an action by life tenants, the

court, if satisfied that a lease of the property will be for the benefit of the persons holding the present estate and do no substantial injury to those in remainder, might authorize a sale of such estate or a lease thereof. Appellant was brought in by publication, an order was made authorizing such lease and appointing Albert C. Barney to make the same, and in May, 1890, he executed the lease to Crosley. This purported to be according to the authority of these court proceedings, and it recited the names of the parties interested, including appellant, and provided that the lessee should pay the agreed rental and all taxes, and meet certain other conditions, and contained this further provision: "And the said Albert C. Barney, acting for and on behalf of the said parties entitled to said premises and the rents, issues, and profits thereof under the will, * * * further covenants and agrees to and with the said lessee * * * that the said parties will, after the expiration of 15 years from the date of this lease, provided this lease is of full force and operation, convey the said premises to the said lessee, his heirs and assigns, * * * provided said lessee, his heirs or assigns, shall have given to them, their heirs or assigns, six months' notice in writing of the intention to exercise said privilege of purchase."

The rentals have been regularly paid, appellant's mother receiving a share thereof. Appellant became of age (in Ohio) in 1895. About 1905 Crosley's rights as lessee became vested in appellee. In June, 1905, it gave appellant written notice of its election to purchase, but a little later recalled this notice; and it then let contracts for, and proceeded to erect on the premises, a building costing more than $1,000,000. In September, 1906, appellant, who, since before 1890, had continuously been a resident of New York, filed this bill, claiming that the option to purchase, found in the lease, is a cloud upon the title to her interest and should be removed. Her substantial position was that the statute did not authorize any order of court for a lease with an option to purchase, and that so far as the order authorized the option to purchase it was void. On the final hearing the bill was dismissed; the court below being of opinion that the order in question was, at the most, voidable only, and therefore should be sustained against this attack.

Jones & Jones, of Newark, Ohio, and McMahon & McMahon, of Dayton, Ohio, for appellant.

Frank O. Suire, of Cincinnati, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). We do not think it is open to us to consider the question whether the order of the common pleas court was void or only voidable, nor the question whether complainant's conduct since her majority should bar her from relief in a court of equity, nor the question whether the lease in all its provisions may be sustained upon the principles of agency and ratification and without any dependence on the court order. While a perpetual lease, or, what is the same thing, a lease for a term "renewable forever," is not known in some jurisdictions, it seems to be not uncommon in Ohio, and the power of fully competent parties to make such a lease is not challenged. An option to purchase is a common feature of leases. There is, then, nothing abnormal or necessarily invalid in the instrument, taken as a whole, and complainant is in the ordinary position of the minor who, after her majority, attacks some instrument made by another in her behalf during her minority.

It is a mistake to regard this suit as an attack upon a decree. The decree was only a means to an end. The end was the contract of

lease. A decree is pronounced by the law, perhaps in invitum. It may often be valid in part and void in part for lack of power. There would be a natural presumption that the court intended to go to the limit of its power and no further. Not so with a contract. Its parts are normally interdependent. A part can be stricken out, while part remains, only if separability clearly appears.

Complainant did not, in this case, attack the lease as an entirety. She only asked to have cut off from it that feature which she considered undesirable. The prayer of her bill is "that the said alleged privilege of purchase of the premises described herein and all language of agreement relating thereto may be set aside and annulled," etc. True, in connection with several clauses to the same effect with that just quoted, there is a prayer "that complainant be decreed to be the owner of said premises and entitled to the possession of the same at the termination of the life estate of her parent"; but, taking the case altogether, this should be construed as a prayer that she be declared the owner subject to the other provisions of the lease. If there was ambiguity in this prayer, it is removed by the statement in appellant's brief that the purpose of the suit is to set aside the privilege of purchase and remove it as a cloud upon the title, and by the statement of counsel upon the oral argument that they were not, in this suit, attacking the lease itself, but only this provision. We are not concerned with complainant's motives in taking this position, but it is not improbable that a perpetual ground rent of $20,500 per year, with taxes paid, and under all the conditions here existing, would be worth more than $500,000, if the purchase option did not exist.

So we find complainant (so far as the present suit is concerned) acquiescing in this lease, and allowing it to stand for her benefit as soon as the life tenancy ceases. She thereby is, for the present, preserving for herself the ultimate benefit of the agreed rental, the tax payments, and all other burdens put upon the lessee. At the same time, she proposes to repudiate the purchase option, which formed a part of the contract and a part of the consideration for the lessee's agreement to pay rent. We see no way in which these can be considered as two contracts not interdependent. Each part is naturally a consideration for the other part. There is no room to conclude that the lessee would have agreed to pay the stipulated rent unless he had been given the option to purchase. This option is not an afterthought, thrown in to make good measure after the bargain was made. It formed one of the mutual conditions negotiated before the application was made to the court. Under familiar rules, complainant cannot be heard to attack one part only of an entire contract (Barrie v. Earle, 143 Mass. 1, 5, 8 N. E. 639, 58 Am. Rep. 126, and cases cited), nor be allowed to ratify in part only, so as to get the benefits and avoid the burdens (Bacon v. Johnson, 56 Mich. 182, 185, 22 N. W. 276).

We do not intend to characterize this bill as in itself a final ratification by complainant of the lease, but rather as a mistaken and abortive attempt to get her claims into court; and if complainant, or an-

other in similar interest, shall hereafter elect to attack the validity of this lease as an entirety, the complaint must receive such attention as its merits deserve and the rules of law or equity permit; and the question might then arise whether the option privilege was so solely for the lessee's benefit that he could, by waiver, cure any general invalidity resulting from the presence of the privilege; but, until such general attack is made, there is nothing for the courts to decide.

The decree should be affirmed, with costs.