ALMERINDO PORTFOLIO, Trading as PORTFOLIO & Co., Appellant, *v.* HARRY RUBIN, Respondent.

(Supreme Court, Appellate Term, First Department, February, 1920.)

Sales — merchandise — when acceptance of part is acceptance of whole — contracts — trial — judgments — Personal Property Law, §§ 125, 156.

   The rule of law that, in the absence of special agreement or of peculiar circumstances, the acceptance of part of an entire shipment implies an acceptance of the whole, was not changed by the Personal Property Law.

   In an action for goods sold it appeared that since the enactment of the Personal Property Law plaintiff had sold to defendant four pieces of merchandise, and claiming that two of them were "shaded and defective" offered to return these but kept and used the other pieces. It was found as a fact that the pieces rejected representing $327.08 were "shaded and defective" and defendant tendered $311.91 therefor. The trial judge, basing his determination upon section 156 of the Personal Property Law which declares that the phrase "divisible contract to sell or sale" means a contract to sell or a sale in which by its terms the price for a portion or portions of the goods less than the whole is fixed or ascertainable by computation, gave judgment for the defendant. Upon reversing the judgment and directing judgment for plaintiff, *held,* that the

Appellate Term, First Department, February, 1920. [Vol. 110.

legislature by such definition of said phrase did not intend to change the law existing at the time of the enactment of the Personal Property Law.

Section 125 of the Personal Property Law, the title of which is "Delivery of wrong quantity," was intended to cover only cases where the wrong quantity of goods may have been delivered, and while it is possible to interpret the third subdivision of said section, which covers the case of a delivery of goods contracted for mixed with goods of a different description, as including the present case by reading the word "description" in its technical significance as indicating quality rather than kind, it was not so intended.

Wagner, J., concurs; Lehman, J., dissents.

APPEAL by plaintiff from a judgment of the Municipal Court of the city of New York, borough of Manhattan, third district, in favor of defendant, after a trial by a judge without a jury.

Louis B. Brodsky, for appellant.

Samuel Kahan (Joseph J. Dreyer, of counsel), for respondent.

BIJUR, J. Nothing but a question of law is involved in this appeal. The case was tried largely upon concessions from which it appears that the plaintiff had sold to the defendant "four pieces of merchandise consisting of 2157/8 yards, aggregating in all $638.99." Defendant, claiming that two of these pieces were "shaded and defective," offered to return them, but kept and used the other two pieces.

The learned judge below found as a fact that the two pieces rejected were shaded and defective. Defendant tendered $311.91, and it was conceded that "the return of those two (*i. e.*, the rejected) pieces represents $327.08."

On this rather unsatisfactory record the respective

Misc.]  Appellate Term, First Department, February, 1920.

counsel are agreed that the only question is whether the acceptance and use of part of the shipment involved an acceptance of all so that defendant would be remitted to a counterclaim for his damages by reason of the defective character of the two rejected pieces; or whether defendant was at liberty, as has been held below, to pay for only what he accepted and reduce plaintiff's claim by way of defense in the amount of the contract price apportionable to the two pieces rejected.

Both counsel and the learned judge below agree that under the law as it existed *prior* to the enactment of the Personal Property Law the acceptance of part of an entire shipment would in the absence of a special agreement or of peculiar circumstances imply an acceptance of the whole. *Simon* v. *Wood,* 17 Misc. Rep. 607; *Mendetz* v. *Wood & Co.,* 86 id. 52; *Pierson* v. *Crooks,* 115 N. Y. 539, 554; *Maynard & Cheeves* v. *Render,* 95 Ga. 652; *Buckeye Buggy Co.* v. *Montana Stables,* 43 Wash. 49; *Wolf* v. *Deitzsch,* 75 Ill. 205, 210.

As Bischoff, J., well puts it in *Simon* v. *Wood, supra:* " The contract was entire, and the defendant could not arbitrarily retain of the whole number such as suited him and decline to receive the remainder. If all of the caps delivered did not come up to the required standard he was not bound to accept any of them. *Neither was the plaintiff's assignor bound to be content with the defendant's acceptance of a part only of the caps agreed by the latter to be accepted by him.* It was the defendant's duty either to retain all, or to reject all, in the absence of an agreement permitting him to do otherwise. Having accepted the caps in part the defendant must be deemed to have accepted them all."

Professor Williston in a note to section 493 of his notable work on Sales expresses the same idea in the following words: " If the buyer can accept some and

reject others, the seller must equally be at liberty to make a valid tender of some and not others.''

The learned judge below based his determination in favor of defendant's contention on section 156 of the Personal Property Law, which reads: '' Definitions: 1. In this article, unless the context or subject matter otherwise requires: ' Divisible contract to sell or sale ' means a contract to sell or a sale in which by its terms the price for a portion or portions of the goods less than the whole is fixed or ascertainable by computation.''

As appellant points out, however, the phrase '' divisible contract to sell or sale '' appears nowhere else in the Personal Property Law, except in sections 88 and 89, referring to '' Destruction of goods sold '' and '' Contracted to be sold,'' respectively, which plainly have no bearing on the instant question. Under these circumstances, I do not think that it was intended by this mere unrelated '' definition '' to change the state of the law existing at the time of the enactment.

Moreover, the entirety of a contract and of the respective obligations of the parties thereunder is not affected by the fact that in one sense it may be regarded as '' divisible.'' This distinction is noted in *Barrie* v. *Earle,* 143 Mass. 1, 4, where the court, quoting from prior decisions, holds that a contract may be '' one and entire in its origin '' yet '' divisible in its operation.'' Such a contract might well be defined as divisible, and yet the respective obligations of the parties remain single and entire. To the same effect, see *Norrington* v. *Wright,* 115 U. S. 188, 203.

It remains, however, to consider the effect of section 125 of the Personal Property Law, to which no reference was made below. That section reads:

'' Sec. 125. Delivery of wrong *quantity*   *   *   *

(3) Where the seller delivers to the buyer the goods he contracted to sell mixed with goods. of a different description not included in the contract, the buyer may accept the goods which are in accordance with the contract and reject the rest, or he may reject the whole.''

It is evident to me that section 125, as its title indicates, was intended to cover only cases where the wrong quantity of goods may have been delivered. The 1st subdivision provides for the case of '' a quantity of goods *less* than he (the seller) contracted to sell;'' the 2d subdivision relates to the delivery of '' a quantity of goods *larger* than he contracted to sell;'' the 3d subdivision covers the case of a delivery of the goods contracted for mixed with goods of a different description.

It is possible to interpret the 3d subdivision to include the instant case by reading the word '' description '' in its technical significance as indicating quality rather than kind, in which sense it has ordinarily been employed only in apposition to express warranty. I do not think, however, that the framers of the act intended it to be so understood.

Williston, in section 402, discusses this particular subdivision of section 125 and speaks of the case covered thereby as one '' When the buyer's offer is of goods which the contract or order called for, *mingled* with other goods of a different *kind.*'' That the inferences to be drawn from such a situation are entirely different from those arising out of the case where some of the goods offered for delivery are merely defective in *quality* is quite apparent from his discussion under sections 459–461. It is significant that he discusses ''Acceptance of part of the goods '' under section 493, which is part of his comment upon section 129 of the act entitled '' What constitutes acceptance '' and not under section 125 relating to

delivery of a wrong quantity. The implication to be derived from a delivery of goods contracted for mixed with those of an entirely different kind is manifestly that the latter may not be intended at all for delivery under the contract. Indeed, in a leading Massachusetts case (*Garnder* v. *Lane,* 12 Allen, 39) it was held that no property passed to the vendee in goods (included in the delivery) of a kind different from those specified in the contract. See also for the distinction in this respect between kind and quality, *Mansfield* v. *Trigg,* 113 Mass. 350, 354: " The entirety may be broken by the concurrent act of both parties, so that a partial rescission may be effected. * * * But if the breach of contract on the part of the seller is only in the *quality,* the other party cannot convert that into a rescission, but must, if he intends to rescind at all, rescind *in toto.*"

Finally, I cannot avoid the inference that the title of section 125, namely, " delivery of a wrong quantity," is no less inept to describe a case like the one at bar, than are the words of subdivision 3, which we are considering, *i. e.,* " Where the seller delivers * * * the goods he contracted to sell mixed with goods of a different description not included in the contract." If a man contracts to deliver 100 watches and instead delivers 75 watches or 125 watches, the case would seem to fall naturally within the terms of the title of section 125 and of subdivisions 1 and 2 respectively. If again he delivered part or all of the 100 watches together with 25 clocks it would be manifestly the delivery of a " wrong quantity " for only 100 articles had been contracted for and it would fit the phraseology of subdivision 3 as being a delivery of the goods contracted for " mixed " with goods of a different description. But can it reasonably be said that if he delivers 100 watches, some of which are defective in

workmanship, he is delivering a *" wrong quantity "* or " goods contracted for ' *mixed* ' with goods of a different description? " In my opinion it would be doing violence to the title of the section, to the language of subdivision 3 and to the intent of the legislature to hold that the instant case was covered by the provision quoted.

Having in mind that the Sales Act is predominantly a codification of the law existing at the time, and that " repeals by implication are not favored, and especially is that true of implied repeals of the common law " (*Matter of Carnegie Trust Co.,* 151 App. Div. 606, 611, 612, citing cases; affd., 206 N. Y. 390), I am convinced that we may not properly regard the established rule of the common law first hereinabove referred to as affected by section 125 of the Sales Act.

Judgment reversed, with thirty dollars costs, and judgment directed for the plaintiff in the court below with appropriate costs in that court and the costs of this appeal.

WAGNER, J. (concurring). In view of the fact that we search in vain for an applicable instance of the employment of the phrase " divisible contract to sell or sale " in the act, that the prefatory words of definition render even its use as there defined dependent and conditional upon both the context and subject matter at hand, and furthermore that the courts have constantly been zealous in resisting implied repeals of the common law, I cannot subscribe to an interpretation of section 156 of the Personal Property Law which would attribute to the legislature by its enactment, in the absence of any clear and affirmative expression by it, an intention to overrule the law as it previously existed. Had the legislature so intended, it is inconceivable that we would be remitted to the

process of mere inference to ascertain it. A change so drastic should be more adequately proclaimed. Nor can support be found for the judgment herein under section 125, " description;" a strained and evidently undesigned meaning as pointed out by my colleague Mr. Justice Bijur. I vote for reversal.

LEHMAN, J. (dissenting). While I admit that the question of law involved in this case is not free from serious doubt, I have reached the conclusion that under the provisions of the Personal Property Law the defendant had a right to accept those goods which complied with the contract and to reject that portion of the goods which were of a different description.

Section 156 of the Personal Property Law defines a " divisible contract to sell or sale " as " a contract to sell or sale in which by its terms the price for a portion or portions of the goods less than the whole is fixed or ascertainable by computation." That section, however, expressly limits its definitions to the meaning of the term as used in that article, and since apparently the words " divisible contract to sell or sale " appear nowhere else in the article, it is somewhat difficult to determine what effect can be given to this portion of the statute. The court cannot, however, presume that the legislature put into the statute a meaningless definition, and without now attempting to give a full interpretation to those words I think we have a right to assume at least that the legislature intended that where by the terms of a contract to sell or a sale the price for a portion of the goods less than the whole is fixed or ascertainable by computation the contract is to be regarded *to some extent and for some purposes as a divisible contract.* The words " divisible contract of sale " have previously received various definitions, and it may well be that the words

Misc.]    Appellate Term, First Department, February, 1920.

" divisible contract to sell or sale " as used in this section of the Personal Property Law should be given their strictest and narrowest definition. Professor Williston in section 464 of his work on Sales states that a divisible contract of sale, using that term properly, is " one and entire in its origin but looking to a series of performances on one side, and equivalent counter-performances on the other, is divisible in its operation," in accordance with the rule laid down in *Barrie* v. *Earle,* 143 Mass. 1, cited by Mr. Justice Bijur, and I agree that under such definition it does not necessarily follow that the obligations of the parties to a divisible contract do not remain single and entire, for many purposes. The courts will still enforce the intent of the parties and if the seller has agreed to deliver a certain quantity of goods, he cannot tender less than the amount he agreed to deliver and claim the agreed price for the portion tendered subject only to a counterclaim on the part of the buyer for damages for failure to deliver the remainder, nor on the other hand can the buyer accept part of a tender of the whole amount called for by the contract and reject the remainder. On the other hand, if the seller does deliver a quantity of goods less than he contracted to sell, the buyer under section 125 of the Personal Property Law has the right to accept or retain the goods so delivered; in such a case he pays for the goods, even though he knew that the seller was not going to perform the contract in full, at the contract rate, and if the price for a portion or portions of the goods less than the whole is by the contract fixed or ascertainable by computation, the contract is to that extent at least a divisible contract. In the present case, therefore, if the seller had tendered to the buyer only the two pieces of goods which were apparently in accordance with the contract the buyer

Appellate Term, First Department, February, 1920.     [Vol. 110.

could have accepted the tender and would have thereupon been liable for the goods accepted at the rate fixed by the contract. The fact that the seller at the same time tendered to the buyer goods which were not in accordance with the terms of the contract should not deprive the buyer of the right to retain those goods which the seller had contracted to sell him and to refuse to accept the other goods which were not in accordance with the contract. It seems to me that subdivision 3 of section 125 of the Personal Property Law was intended to cover such a contingency, and should not be limited to a case where the seller has delivered all the goods which he contracted to sell and, mixed with these goods, goods of a different description not included in the contract.

Since under the provisions of the Personal Property Act the contract here under consideration is at least for some purposes a divisible contract to sell and since further under the provisions of that act the defendant has the right to accept and is then bound to pay for at the contract rate, the delivery of a smaller quantity of goods than the defendant agreed to sell, and since further a delivery of a smaller quantity was made by the defendant though mixed with goods of another description, it would seem to follow that the buyer was within his rights in retaining the goods that were in accordance with the contract and rejecting the remainder. In coming to this conclusion I have not overlooked Professor Williston's statement that if the buyer can accept some and reject others, the seller must equally be at liberty to make a valid tender of some and not of others, but I think that this objection does not apply in the present case. The seller has not the right to make a tender of less than he contracted to sell, but if he does make such a tender, the buyer has a right to accept it under the

express provisions of the Personal Property Law. The seller has no greater right to tender a part of the goods which he contracted to sell mixed with goods of another description than he would have to tender a part of the goods alone, but on the other hand the buyer has the same right to accept delivery of the part of the goods which are in accordance with the contract when tendered to him by the seller, and to reject the remainder as if the seller had tendered only a portion of the goods in accordance with the contract.

It follows that the judgment should be affirmed, with costs.

Judgment reversed, with thirty dollars costs.