[Civ. No. 1937. Fourth Appellate District.—November 13, 1936.]

E. H. ROBINSON, etc., Respondent, v. BOULEVARD EXPRESS, INC. (a Corporation), Appellant.

Wallace K. Downey, Gray, Cary, Ames & Driscoll and E. A. Walters for Appellant.

Stearns, Luce, Forward & Swing and Fred Kunzel for Respondent.

BARNARD, P. J.—This is an action for damages for breach of a contract. For some time prior to August, 1929, the plaintiff Robinson and the defendant Case, as co-partners operating under the fictitious name of "C. & R. Transfer", had been engaged in a local transfer and trucking business in the city of San Diego, and the Boulevard Ex-

press, Inc., which will be referred to as the appellant, had been operating a common carrier transportation service by truck between Los Angeles and San Diego. On August 31, 1929, these parties entered into a contract under the terms of which the copartners were to pick up and deliver to or from appellant's depot all freight, either going out of or coming into San Diego over its lines, at an agreed compensation. The term of the contract was to be ten years, with the provision that either party should have the right to renew the same for a further period of ten years. By one paragraph of the contract the copartners agreed "not to enter into any contract or agreement to, nor to, pick up or distribute freight or express matter for any other truck transportation company, person, firm, or corporation engaged in the transportation of freight or express matter in competition with" the appellant.

On September 1, 1931, the copartnership was dissolved and Case continued business in San Diego under the old name of C. & R. Transfer, while Robinson began a similar business under the name of "Arrow Transfer". Under the terms of the dissolution agreement Robinson assumed the contract with the appellant. About the middle of October, 1931, Case, operating under the old name of C. & R. Transfer, entered into an agreement to collect and deliver freight for a corporation named California Merchants Association, Ltd., which was also engaged in the business of transporting freight between Los Angeles and San Diego in competition with the appellant. The first freight thus collected and delivered by Case was shipped on October 27, 1931. On November 1, 1931, the appellant sold its assets and business to the Motor Freight Terminal Company and for four months thereafter that company used the services of Robinson in delivering and collecting freight in San Diego, paying the same compensation which he had theretofore received.

On March 1, 1932, the Motor Freight Terminal Company notified Robinson that his services would no longer be required and this action followed. Case, refusing to join as a plaintiff, was made a defendant. The complaint alleged, among other things, that the plaintiff for and on behalf of the copartnership had, since September 1, 1931, up to February 29, 1932, performed each and all of the obligations to be performed by Case and Robinson under the terms of

the contract. The answer denied this allegation and affirmatively alleged that since September 1, 1931, Case had conducted a business under the name of C. & R. Transfer Company and had performed for a competitor of the appellant services of a like nature to those to be performed for the appellant under the terms of the contract.

Among other things the court found that on September 1, 1931, the partnership agreement between Case and Robinson was dissolved, except as to the contract which is here involved; that the partnership remained in effect for the purpose of carrying out each and all of the obligations and duties imposed upon the copartners by the terms of the contract; that the rights, duties and obligations of the partners under the contract were, on September 1, 1931, on behalf of the partnership taken over and assumed by Robinson; that the defendant had notice of this dissolution on or about September 1, 1931; that subsequent to the dissolution of the partnership and up to February 29, 1932, Robinson performed each and all of the obligations to be performed by Case or himself under the terms of the agreement; that during the same period the defendant performed each and all of the obligations imposed upon it by the terms of the contract; that on March 1, 1932, the defendant wrongfully, without cause and in violation of the agreement repudiated and breached the same by notifying Robinson that it would no longer permit him to pick up or deliver freight; that Case at all times since September 1, 1931, conducted a business under the fictitious name of C. & R. Transfer and "that it is not true that said Case has performed services of a like nature to those to be performed by C. & R. Transfer in violation of the terms of said agreement, for a competitor of this defendant"; that it is not true that on August 31, 1929, the defendant had a right to and did rely upon the responsibility, integrity and business ability of both Case and Robinson; and that it is not true that said Robinson or said Case did not perform each and all of the obligations to be performed by them under the terms of the contract.

This appeal is from a judgment in favor of the plaintiff for $12,372.03.

The main points raised are that certain findings are not supported by the evidence and that the respondent is not entitled to judgment for the reason that the copartner-

ship was itself guilty of a breach of the contract at the time of the alleged breach on the part of the appellant. In *Rathbun* v. *Security Mfg. Co.*, 82 Cal. App. 793 [256 Pac. 296], the court said: "It is elementary that one party cannot compel another to perform while he himself is in default under the contract." In *Los Angeles Gas & Elec. Corp.* v. *Amalgamated Oil Co.*, 168 Cal. 140 [142 Pac. 46], it is said:

"Without regard to the finding that the action was barred by limitation, it is in effect conceded, as it necessarily must be, that judgment in favor of the defendant necessarily followed from the findings that the plaintiff had violated the contract in material respects before any breach had been committed by the defendant, and that such violations by the plaintiff had not been waived by the defendant. A party cannot recover damages for the breach of an entire contract if he himself has failed, without lawful cause, to perform the covenants, upon compliance with which the obligations of the defendant were dependent. Thus, in this case, a failure by the Gas Company to take from the Oil Company all of the oil agreed to be taken (or, which is the same thing, the taking of such oil from others) would deprive the plaintiff of the right to complain of the subsequent refusal of the defendant to furnish oil agreed to be delivered. This is the statement of an elementary rule, which requires, for present purposes, no citation of authority beyond the decision, already referred to, in the former litigation between the same parties."

It may be assumed for the purposes of this decision that the Motor Freight Terminal Company assumed the obligations of the appellant under the contract in question and that the breach, if any, occurred when notice was given on March 1, 1932, that the services of respondent would no longer be required. If the copartners were then in default in performing their part of the contract this action could not be maintained unless such default had been waived by the appellant. While the court found that the appellant had notice of the dissolution of the partnership there is no finding, and we are pointed to no evidence which would support a finding, to the effect that the appellant had waived the provision that neither of the partners would pick up or distribute freight for any other company, person, firm or

corporation engaged in the transportation of freight in competition with the appellant.

The respondent argues that the picking up of freight by Case for the California Merchants Association, Ltd., was not a breach of the contract for the reason that that company was then engaged in shipping its freight by rail, and that the freight was taken or delivered by Case in connection with shipments by rail while the contract in question refers only to truck transportation. Apparently this view was adopted by the trial court and is reflected in the findings to the effect that Case was not engaged in picking up and distributing freight for a competitor of the appellant in violation of the terms of the agreement, and that the copartners were not in default. In our opinion this interpretation is not justified by the language of the contract. The agreement plainly states that the copartners agreed not to pick up or distribute freight for any other truck transportation company or for any person, firm or corporation engaged in the transportation of freight in competition with the appellant. It clearly appears from the evidence that the California Merchants Association, Ltd., was engaged in the transportation of freight between Los Angeles and San Diego in competition with the appellant and that the respondent, from about the middle of October, 1931, to the date of the trial, was picking up and distributing freight for that competitor while operating under the original name of C. & R. Transfer.

The manager of California Merchants Association, Ltd., testified that that company operated between Los Angeles and San Diego; that it had operated its own trucks from April to July, 1931, when it stopped on receiving a cease and desist order from the Railroad Commission; that it then began to forward freight over other carriers; that it used other truck transportation companies until it could arrange with the Santa Fe Railroad for a "pool car"; that it started pool car shipments on the 27th or 28th of September, 1931; that he met Case about the middle of October, 1931; that Case was then operating under the name of C. & R. Transfer; that "We just had a verbal conversation and told him that the bigger the business was, the more money we would make and as he knew quite a number of people in San Diego as he had been here for years hauling freight,

that he should give us all the assistance he could to secure that freight and he said yes he would;" that he then entered into a contract with Case; that Case then took the shipments that were sent down in pool cars and distributed them in San Diego territory and collected freight for this company to ship to Los Angeles; and that the first shipment handled by Case went through on October 27, 1931. The respondent himself testified that Case had continued business under the name of C. & R. Transfer up to the time of the trial, that Case commenced picking up and delivering freight for the California Merchants Association, Ltd., that that company was engaged in the transportation of freight between Los Angeles and San Diego, and that it was in competition with the appellant. This evidence is uncontradicted and it follows that the findings, to the effect that everything to be done by either Case or Robinson under the terms of the contract had been performed up to February 29, 1932, and that Case had not performed services of a similar nature for a competitor of the appellant, are not sustained by the evidence.

The record shows without conflict that one of the copartners was performing services for a competitor of the appellant in violation of the contract up to the date of the trial. The respondent was bound by the acts of his copartner (*Asbestos etc. Co.* v. *Lennig-Rapple Co.*, 26 Cal. App. 177 [146 Pac. 188]) and, being in default, was in no position to maintain this action. Some contention is made that even if the respondent was in default he was entitled to ten days after notice within which to cure the breach, by virtue of a certain provision of the contract. That provision set forth one of the ways in which the contract might be terminated but has no bearing on the right of the respondent to maintain an action for damages for breach of the contract at a time when he was himself in default.

The views above expressed make it unnecessary to consider the other points raised.

The judgment is reversed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 1, 1936, and an ap-

plication by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 11, 1937.